IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION



F I L E D
SEP 2 1 2016
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| THOUSAND OAKS BARREL CO., LLC a Virginia limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DEEP SOUTH BARRELS LLC, a Texas limited liability company, | ) ) ) |
| JONATHAN EMMONS, | ) ) |
| ELISSA EMMONS, | ) ) |
| RANDALL BENTLEY, | ) ) |
| WOOD HARBOUR d/b/a Renaissance Barrel, a Texas company, | ) ) ) |
| and | ) ) |
| MARK CARBONI, | ) ) |
| Defendants. | ) ) |

Civil Action No.: 1:16 CV-1204

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Thousand Oaks Barrel Co., LLC, its predecessor-in-interest Thousand Oaks

Barrel LLC, and its predecessor-in-interest Thousand Oaks Barrel Co. ("Thousand Oaks" or

"Plaintiff"), by and through its undersigned counsel, complains against multiple defendants as

follows:

## NATURE OF THE ACTION

1.     This is an action to for an injunction, an accounting and money damages arising

from Defendants' willful infringement of Thousand Oaks intellectual property including

trademarks, copyrights, false designation of origin and passing off, misappropriation of trade

1

secrets, misappropriation of product creations, unfair competition, and breach of contract, under federal and state laws.

## THE PARTIES

2.     Plaintiff is a Virginia limited liability company with a principle place of business at 9423 Main Street, Manassas, VA 20110.  Since 1999, Plaintiff has been engaged in the manufacture, distribution, and sale of oak barrels for aging wine and distilled spirits, kits to age and flavor distilled spirits in oak barrels, products made from oak barrels, and decorative signs in the United States, the Commonwealth of Virginia, and this District directly and/or through its resellers.   Since at least 2001, Plaintiff has operated in the State of Texas through business operations out of a distribution location, through retail sales of products directly to consumers, and through wholesale sales of products to retail partners in Texas.

3.     Defendant Deep South Barrels LLC is a limited liability company organized in 2010 and existing under the laws of the state of Texas, with an address of 2849 Miller Ranch Road, Suite 533, Pearland, TX 77584.

4.     Defendant Jonathan Emmons is an individual formerly residing in the Commonwealth of Virginia and currently residing in the State of Texas and upon information and belief at 7403 Northfork Drive, Pearland, Texas 77584.  Defendant Jonathan Emmons is a co-founder and joint owner of Deep South Barrels LLC along with Defendant Elissa Emmons and Defendant Randall Bentley.   Upon information and belief, Mr. Emmons had actual knowledge of the unlawful activity complained of herein and induced, caused, and materially contributed to that activity, or ratified and adopted acts, including but not limited to, of copyright infringement, trademark infringement, unfair competition, and common law misappropriation

thereby making him vicariously liable both directly and, along with Defendants Elissa Emmons and Randall Bentley, as a joint tortfeasor for the acts of Deep South Barrels LLC.

5.      Defendant Elissa Emmons is an individual residing in the State of Texas and upon information and belief at 7403 Northfork Drive, Pearland, Texas 77584. Defendant Elissa Emmons is a co-founder and joint owner of Deep South Barrels LLC along with Defendant Jonathan Emmons and Defendant Randall Bentley. Defendant Elissa Emmons has been Deep South Barrels LLC's Chief Executive Officer and currently holds the position of Vice President of Business Operations. Upon information and belief, Ms. Emmons had actual knowledge of the unlawful activity complained of herein and induced, caused, and materially contributed to that activity, or ratified and adopted acts, including but not limited to, of copyright infringement, trademark infringement, unfair competition, and common law misappropriation thereby making her vicariously liable both directly and, along with other Defendants Jonathan Emmons and Randall Bentley, as a joint tortfeasor for the acts of Deep South Barrels LLC.

6.      Defendant Randall Bentley is an individual formerly residing in Virginia and currently residing in the State of Texas and upon information and belief at 1111 Lake Shore Drive, Pearland, Texas 77581. Defendant Randall Bentley is a co-founder and joint owner of Deep South Barrels LLC along with Defendant Jonathan Emmons and Defendant Elissa Emmons. Upon information and belief, Mr. Bentley is the Managing Partner of Business Development of Deep South Barrels LLC and had actual knowledge of the unlawful activity complained of herein and induced, caused, and materially contributed to that activity, or ratified and adopted acts, including but not limited to, of copyright infringement, trademark infringement, unfair competition, and common law misappropriation thereby making him vicariously liable

both directly and, along with other Defendants Jonathan Emmons and Elissa Emmons, as a joint tortfeasor for the acts of Deep South Barrels LLC.

7.      Defendant Wood Harbour, upon information and belief, is a sole proprietorship, also doing business as Renaissance Barrel, which is organized and existing under the laws of the State of Texas with an address of 21778 FM 1774, Plantersville, TX 77363.

8.      Upon information and belief, Defendant Mark Carboni is an individual residing in the State of Texas and upon information and belief at 12241 Lakeview Manor Dr. #7, Willis, TX 77318. Defendant Mark Carboni is the founder and owner of Defendant Wood Harbour. Upon information and belief, Mr. Carboni had actual knowledge of the unlawful activity complained of herein against Wood Harbour and induced, caused, and materially contributed to that activity, or ratified and adopted acts, including but not limited to, of copyright infringement, trademark infringement, unfair competition, and common law misappropriation thereby making him vicariously liable directly for the acts of Defendant Wood Harbour.

## JURISDICTION AND VENUE

9.      The Causes of Action arise under the laws of the United States and this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the action arises under the U.S. Copyright Act of 1976 (17 U.S.C. §§101 *et seq.*), 15 U.S.C. § 1051, *et seq.* (trademark actions arising under the Lanham Act), and 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks and copyrights), and 28 U.S.C. § 1332(a) (diversity of citizenship). This action additionally asserts state statutory and common law claims for unfair and deceptive trade practices, trademark infringement, misappropriation, unfair competition, breach of contract under the Virginia Uniform Commercial Code Titles 8.1A-8.11, and trade secret misappropriation under Virginia Uniform Trade Secrets Act § 59.1-336 to § 59.1-338, and this

Court has jurisdiction as to such claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) because it is part of the same case or controversy as that addressed by the federal law causes of action (supplemental jurisdiction over state claims).

10. The Court has jurisdiction over Defendants Deep South Barrels LLC, Jonathan Emmons, Elissa Emmons, and Randall Bentley (hereinafter "Deep South") and venue is properly laid pursuant to 28 U.S.C. § 1391(b), (c) and/or (d) in that, on information and belief (1) because at least one of the acts of complained of herein occurred in this District; (2) Deep South has purposely directed business activities into Virginia with the intent of conducting business in the state (3) Deep South has regularly conducted business activities in Virginia; (4) the acts purposely directed into, or conducted in, Virginia create a potential cause of action in state courts; (5) Deep South's acts or omissions purposely directed into, or conducted in, Virginia have damaged Thousand Oaks and its property in the United States, the Commonwealth of Virginia and in this District.

11. The Court has jurisdiction over Defendant Wood Harbour and venue is properly laid pursuant to 28 U.S.C. § 1391(b), (c) and/or (d) in that, on information and belief (1) because at least one of the acts of complained of herein occurred in this District; (2) Wood Harbour has purposely directed business activities into Virginia with the intent of conducting business in the state (3) Wood Harbour has regularly conducted business activities in Virginia; (4) the acts purposely directed into, or conducted in, Virginia create a potential cause of action in state courts; (5) Wood Harbour's acts or omissions purposely directed into, or conducted in, Virginia have damaged Thousand Oaks and its property in the United States, the Commonwealth of Virginia and in this District.

## THOUSAND OAKS' INTELLECTUAL PROPERTY ASSETS AND PRODUCTS

12.  This is a story of one man's success in building a company and new product market in the United States with his own innovative products and creations in a true entrepreneur's spirit, and where an employee from Virginia who, instead of competing fairly in the marketplace, literally started his own business out of wrongfully and egregiously copying those innovative products and creations.

13.  In 1999, Mr. Bryan Weisberg, owner and manager of Thousand Oaks and the Plaintiff's predecessor-in-interest, began investigating how he could create a miniaturized version of a full-sized 53 gallon bourbon barrel. Mr. Weisberg believed that such a smaller barrel that was made just as well as the bourbon barrels used by distilleries could be used by individuals at home to age and flavor their own store-bought wine and distilled spirits in a similar manner that wineries and the large distilleries age alcohol. Not being familiar with barrel-making, Mr. Weisberg spent considerable time and resources meeting with distillers, wineries, and barrel manufacturers across the United States. Weisberg wanted to understand the end-to-end aspects of, and best practices for, creating quality bourbon barrels including where to source the proper aged American White Oak wood for a bourbon barrel, how to char (burn) the interior of the barrel, and to how to clean and sterilize barrels between uses.

14.  Weisberg spent his own time, money, and resources to build and open a manufacturing and warehouse facility in Manassas, Virginia and to locate and partner with a manufacturing facility in northern Mexico. Because of Mr. Weisberg's persistence and dedication, by at least 2003 Thousand Oaks manufactured the first commercially-available personal sized bourbon barrel for sale across the United States.

15.     In 2003, Weisberg created an E-commerce website <www.1000oaksbarrel.com> to advertise and sell 1L, 2L, 3L, 5L, and 10L personal sized oak barrels and other Thousand Oaks products directly to customers over the Internet.

16.     Since 2003, Thousand Oaks has set up vendor booths at many outdoor festivals and events in the mid-Atlantic region where Thousand Oaks would sell products directly to consumers.   Thousand Oaks has also become a wholesale supplier of small personal sized bourbon barrels to numerous retail partners that sell Thousand Oaks small barrels and other products either direct to consumers through a store or booth or via E-commerce websites.

17.     In 2008, Thousand Oaks purchased a costly laser engraving machine so that it could create "personalized" barrels with graphics and customer's names burned into one end of a barrel, called the barrel "head."   Mr. Weisberg created a catalog of graphical images and templates from which customers could choose and customize with their own names and information. Thousand Oaks was the first company to offer this kind of customized personal sized bourbon barrel with engraved graphics.   **Figure 1** is an example of a "personalized" 2-liter barrel manufactured by Thousand Oaks.   The graphic is referred to as the "P5 Design" in Thousand Oaks' catalog.

**Figure 1**
Source: <www.1000oaksbarrel.com>



18.     Mr. Weisberg's innovation of a personalized, engraved mini oak barrel has been a huge commercial success, selling hundreds of thousands of barrels through national retailers such as Wine Enthusiast, Hammacher Schlemmer, and many other national partners and distributors. Thousand Oaks currently sells over 100,000 mini oak barrels individually and as part of other products per year throughout the United States, in Virginia, and in this District.

19.     Mr. Weisberg also created a number of other original and innovative product lines out of mini oak barrels. His most successful is a distilled spirits aging and flavoring product created in 2006 identified with the mark "BOOTLEG KIT." Other innovative products created, manufactured distributed, and sold by Thousand Oaks are identified with the marks CIGAR INFUSION BARERL, WEDDING BARREL, and BARREL MUG.

## THE THOUSAND OAKS COPYRIGHTS

20.     Thousand Oaks owns the following copyright works in paragraphs 22-34.

21.     A collection of Thousand Oaks' 2008 designs were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823846. (See **Exhibit A).**

22.     A collection of Thousand Oaks 2010 designs were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823982. (See **Exhibit B).**

23.     A collection of Thousand Oaks 2011 designs were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893824048. (See **Exhibit C).**

24.     A collection of Thousand Oaks 2003 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568341. (See **Exhibit D**).

25.     A collection of Thousand Oaks 2008 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823596. (See **Exhibit E**).

26.     A collection of Thousand Oaks 2010 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568847. (See **Exhibit F**).

27.     A collection of Thousand Oaks 2014 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823680. (See **Exhibit G**).

28.     The Thousand Oaks "P5 Design" barrel graphic design was deposited for copyright registration and assigned case Serial No. 1-3806696071. (See **Exhibit H**).

29.     The Thousand Oaks' "WEWhiskey" barrel graphic design was deposited for copyright registration and assigned case Serial No. 1-3893823781. (See **Exhibit I**).

30.     The Thousand Oaks 2014 product catalog was deposited for copyright registration and assigned case Serial No. 1-3806240001. (See **Exhibit J**).

31.     The Thousand Oaks 2016 product catalog was deposited for copyright registration and assigned case Serial No. 1-3806314352. (See **Exhibit K**).

32.     A Thousand Oaks 2006 product label for the "Bootleg Kit" was deposited for copyright registration and assigned case Serial No. 1-3893853441. (See **Exhibit L**).

33.     A Thousand Oaks 2011 product card for the "Bootleg Kit" was deposited for copyright registration and assigned case Serial No. 1-3893853507. (See **Exhibit M**).

34.     A Thousand Oaks 2010 label for the BOOTLEG KIT was deposited for copyright registration and assigned case Serial No. 1-3899999741 (See **Exhibit N**).

35.     The Thousand Oaks trademark BOOTLEG KIT was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No. 87122053.

36.     The Thousand Oaks trademark CIGAR INFUSION BARREL was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No. 87122053.

37.     The Thousand Oaks trademark WEDDING BARREL was submitted for registration with the United States Patent and Trademark Office and assigned application Serial No.87128101.

## THE THOUSAND OAKS BARREL GRAPHICS

38.     Thousand Oaks maintains a catalogue of graphics, created by Weisberg, that can be engraved onto and end of a barrel, called the barrel "head," or on faces of other barrel or wood products.

39.     The barrel head graphic designs were created by Weisberg for Thousand Oaks using Weisberg's knowledge and skill as a graphical designer.   Examples of such graphics are included in the copyrighted Thousand Oaks Product Catalogs in **Exhibit J** and **Exhibit K.**

40.     Popular graphics with customers are ones that may be customized with a customer's.  Examples of such customizable graphics are shown in **Figure 2**.

**Figure 2**
Source: Thousand Oaks Barrel Graphic Designs

| "P5 Design" barrel graphic Copyright Serial No. 1-3806696071 | "WEWhiskey" barrel graphic Copyright Serial No. 1-3893823781 |
|---|---|
| **LETCHMAN'S** PREMIUM BARREL AGED **WHISKEY** John Letchman Distillery FRANKLIN, WISCONSIN EST. 1723 | **LETCHMAN'S** Brand PREMIUM BARREL AGED **WHISKEY** T. Communals Distillery WASHINGTON, D.C. |

41.    Copyrightable aspects of the P5 Design and WEWhiskey designs include the arrangement and spacing of the words and graphics. These and numerous other Thousand Oaks designs were originally authored by Weisberg and/or Thousand Oaks, are owned by Thousand Oaks, and have been properly submitted in copyright applications to the U.S. Copyright Office. (*See, e.g., Exhibits A, B, C, H, I, J, K*).

## THE THOUSAND OAKS WEBSITE

42.    Thousand Oaks created, owns, and operates the E-commerce website <www.1000oaksbarrel.com> (hereinafter "Website"). The purpose of the Website is to provide Thousand Oaks' customers a storefront for ordering products and to use an extensive resource for dependable and factual content regarding Thousand Oaks' products.

43.    Thousand Oaks has an extensive investment in the content of its Website. Since its creation in 2003, Thousand Oaks has updated its Website to feature new product offerings and graphic designs. The Website offers a vast selection of hundreds of high-quality products, decor derived from oak barrels or natural wood, signage, and other accessories for the wine and

11

distilled spirits industry and consumers. The Website allows a retail customer to select, customize, and pay for a Thousand Oaks barrel product directly through the Website.

44.     The Website also contains descriptions for products, answers to frequently asked questions ("FAQs") for prospective and existing customers, and instructions for the care and use of oak barrels. Mr. Weisberg, on behalf of Thousand Oaks, spent considerable time writing these descriptions, answers to FAQs, and instructions.

45.     A selection of Thousand Oaks website content originally authored by Weisberg and/or Thousand Oaks, are owned by Thousand Oaks, and have been properly submitted in copyright applications to the U.S. Copyright Office. (*See, e.g., Exhibits D, E, F, G*).

## THE THOUSAND OAKS TRADEMARKS

### A.      *The BOOTLEG KIT Trademark*

46.     Thousand Oaks owns and has continuously used, in Virginia, and in interstate commerce throughout the United States, the trademark BOOTLEG KIT at least as early as 2006 to identify its company and/or predecessor-in-interest as the source of a unique product line for consumers and retailers.

47.     Thousand Oaks has continuously used, in Texas, the trademark BOOTLEG KIT at least as early as 2008 to identify its company and/or predecessor-in-interest as the source of the unique product line for consumers and retailers.

48.     Thousand Oaks sells the BOOTLEG KIT product to retail customers via the Thousand Oaks Website and other online storefronts, direct to customers via festivals and events, and retail partners in interstate commerce throughout the United States. Thousand Oaks also sells the BOOTLEG KIT product as an original equipment manufacturer (OEM) to retail establishments in Texas and in interstate commerce throughout the United States.

49.     The BOOTLEG KIT product includes an oak barrel, a flavoring essence, and instructions for aging and flavoring a distilled spirit

50.     Since its first advertisement, offer, and sale of the BOOTLEG KIT product in 2006, Thousand Oaks has continuously used the BOOTLEG KIT mark, which Thousand Oaks has prominently displayed in advertising and marketing of its products as a trade name and product brand in print advertisements and brochures, on <www.1000oaksbarrel.com>, on multiple websites on the Internet owned and operated by Thousand Oaks or Thousand Oaks retail customers, and other promotional and marketing materials.

51.     Since its first advertisement, offer, and sale of the BOOTLEG KIT in Texas in 2008, Thousand Oaks and Thousand Oaks retail partners have continuously used the BOOTLEG KIT mark, which Thousand Oaks has prominently displayed in advertising and marketing of its products as a trade name and product brand in print advertisements and brochures, and on multiple E-commerce websites on the Internet owned and operated in Texas.

52.     Thousand Oaks created, owns, and maintains the Internet website <www.swishbarrel.com> that was specially created in 2007 to advertise, market and sell the BOOTLEG KIT product. Thousand Oaks also created, owns, and maintains the Internet website <www.bootlegkit.com> that was specially created in 2016 to advertise, market and sell the BOOTLEG KIT product.

53.     The BOOTLEG KIT product has been a huge commercial success, selling hundreds of thousands of BOOTLEG KIT products to consumers, at national and international retailers, and retail partners across the United States including in Virginia and Texas. The commercial success of the BOOTLEG KIT product has resulted in widespread recognition of the product and Thousand Oaks is recognized as the source of the BOOTLEG KIT product.

13

54.     Competitors to Thousand Oaks in Texas and other states have unlawfully directly and deliberately copied the BOOTLEG KIT trademark and product, or confusingly similar versions of the BOOTLEG KIT trademark, reinforcing the trademark's recognized commercial success and secondary meaning.

55.     Thousand Oaks has acquired strong common law trademark rights in its BOOTLEG KIT mark through extensive use and product sales in Virginia, Texas, and in interstate commerce in connection with Thousand Oaks' business activities in multiple states.

56.     As a result of Thousand Oaks' efforts, the quality of its BOOTLEG KIT product and its promotions, the Thousand Oaks' BOOTLEG KIT mark has become prominently placed in the minds of the public.  Members of the public have become familiar with Thousand Oaks' BOOTLEG KIT mark, and have come to recognize the mark and product and associate them exclusively with Thousand Oaks.  Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

57.     Thousand Oaks' BOOTLEG KIT mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Plaintiff's extensive use, sales, marketing, and advertising in Virginia, Texas, and the United States.  Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

58.     By using Thousand Oaks' mark BOOTLEG KIT for approximately a decade in interstate commerce and Virginia commerce, and at least eight years in Texas commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, and the mark has also acquired secondary meaning.

59.    Thousand Oaks, through its counsel, submitted its BOOTLEG KIT mark for registration at the U.S. Patent and Trademark Office and claimed first evidence of use under 15 U.S.C. § 1051(a) as of at least December 2, 2006.  The application received serial number 87122053 and is current pending.

**B.    *The CIGAR INFUSION BARREL Trademark***

60.    Thousand Oaks owns and has used, in Virginia and in interstate commerce, the trademark CIGAR INFUSION BARREL at least as early as 2007 to identify its company and/or predecessor-in-interest as the source of a unique product line for consumers and retailers featuring an oak barrel specially constructed for holding and flavoring tobacco, such as cigars and loose tobacco.

61.    Thousand Oaks has continuously used, in Texas, the trademark BOOTLEG KIT at least as early as 2008 to identify its company and/or predecessor-in-interest as the source of the unique product line for consumers and retailers featuring an oak barrel specially constructed for holding and flavoring tobacco, such as cigars and loose tobacco.

62.    Thousand Oaks sells the CIGAR INFUSION BARREL product to retail customers via the Website and direct to customers via festivals and events throughout the United States.    Thousand Oaks also sells the BOOTLEG KIT product as an original equipment manufacturer (OEM) to retail establishments in Virginia, Texas and interstate commerce throughout the United States.

63.    Since its first advertisement and sale of the CIGAR INFUSION BARREL product in 2007, Thousand Oaks has continuously used the CIGAR INFUSION BARREL mark, which it has prominently displayed in advertising and marketing of its products as a trade name

and product brand on <www.1000oaksbarrel.com>, on multiple ecommerce websites on the Internet owned and operated in Texas, and other promotional and marketing materials.

64.     The CIGAR INFUSION BARREL product has been a huge commercial success, selling tens of thousands of products to consumers, at national retailers, and retail partners across the United States including Virginia and Texas.   The commercial success of the CIGAR INFUSION BARREL product has resulted in widespread customer recognition of the product and Thousand Oaks is recognized as the source of the CIGAR INFUSION BARREL product.

65.     Competitors to Thousand Oaks in Texas and other states have unlawfully directly and deliberately copied the CIGAR INFUSION BARREL trademark and product, or confusingly similar versions of the trademark, thereby reinforcing the trademark's recognized commercial success and secondary meaning.

66.     Thousand Oaks has acquired strong common law trademark rights in its CIGAR INFUSION BARREL mark through extensive use in Virginia, Texas, and in interstate commerce in connection with Thousand Oaks' business activities in multiple states within the United States.

67.     As a result of Thousand Oaks' efforts, the quality of its Cigar Infusion Barrel product, and its promotions, the Thousand Oaks' CIGAR INFUSION BARREL mark has become prominently placed in the minds of consumers.   Consumers have become familiar with Thousand Oaks' CIGAR INFUSION BARREL mark, and have come to recognize the mark and product and associate them exclusively with Thousand Oaks.   Thousand Oaks has acquired a valuable reputation and goodwill among consumers as a result of such association.

68.     Thousand Oaks' CIGAR INFUSION BARREL mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Thousand Oaks' extensive use, sales, marketing, and advertising.

Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Thousand Oaks' products have become synonymous.

69. By using Thousand Oaks' CIGAR INFUSION BARREL mark for over nine years in interstate commerce and Virginia commerce, and at least eight years in Texas commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with consumers, the mark has also acquired secondary meaning.

70. Thousand Oaks, through its counsel, submitted its CIGAR INFUSION BARREL mark for registration at the U.S. Patent and Trademark Office. Thousand Oaks claimed first evidence of use under 15 U.S.C. § 1051(a) as of at least April, 2007. The application received serial number 87125868 and is current pending.

### C.    The WEDDING BARREL Trademark

71. Thousand Oaks owns and has continuously used, in Virginia, in Texas, and in interstate commerce, the trademark WEDDING BARREL at least as early as 2011 to identify its company and/or business as the source of a unique product line featuring an oak barrel specially constructed for holding wedding cards and paper or other gifts.

72. Thousand Oaks sells the WEDDING BARREL to retail customers via the Website and direct to customers via festivals and events. Thousand Oaks also sells the WEDDING BARREL product as an original equipment manufacturer (OEM) to retail establishments in Virginia, Texas and in interstate commerce throughout the United States.

73. Since its first advertisement and sale of the WEDDING BARREL product in 2011, Thousand Oaks has continuously used the WEDDING BARREL mark, which it has prominently displayed in advertising and marketing of its products as a trade name and product

17

brand in print advertisements and brochures, on <www.1000oaksbarrel.com>, on multiple websites on the Internet owned and operated in Texas, and other promotional and marketing materials.

74. The WEDDING BARREL product has been a huge commercial success, selling tens of thousands of WEDDING BARRELS at national retailers, and retail partners across the United States including Texas and Virginia. The commercial success of the WEDDING BARREL product has resulted in widespread recognition of the product and Thousand Oaks is recognized as the source of the WEDDING BARREL product.

75. Competitors to Thousand Oaks in Texas and other states have unlawfully directly and deliberately copied the WEDDING BARREL trademark and product, thereby reinforcing the trademark's recognized commercial success and secondary meaning.

76. Thousand Oaks has acquired strong common law trademark rights in its WEDDING BARREL mark through extensive use and sales in Virginia, Texas, and in interstate commerce in connection with Thousand Oaks' business activities in multiple states within the United States.

77. As a result of Thousand Oaks' efforts, the quality of its WEDDING BARREL product, and its promotions, the Thousand Oaks WEDDING BARREL mark has become prominently placed in the minds of consumers. Consumers have become familiar with the WEDDING BARREL mark, and have come to recognize the mark and product and associate them exclusively with Thousand Oaks. Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

78. The Thousand Oaks WEDDING BARREL mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's

products as a result of Plaintiff's extensive use, sales, marketing, and advertising in Virginia, Texas, and the United States. Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

79.     By using Thousand Oaks' WEDDING BARREL mark for at least five years in interstate commerce, Texas commerce, and Virginia commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, and the mark has also acquired secondary meaning.

80.     Thousand Oaks, through its counsel, submitted its WEDDING BARREL mark for registration at the U.S. Patent and Trademark Office. Thousand Oaks claimed first evidence of use under 15 U.S.C. § 1051(a) as of at least September, 2009. The application received serial number 87128101 and is current pending.

### E.     *The TOP SHELF TASTE AT A BOTTOM BARREL PRICE Trademark*

81.     Thousand Oaks owns and has used, in Virginia and in interstate commerce, the trademark TOP SHELF TASTE AT A BOTTOM BARREL PRICE ( hereinafter "TOP SHELF" mark) as a tagline for the BOOTLEG KIT trademark at least as early as 2006 to identify its company and/or predecessor-in-interest as the source of the Bootleg Kit product for consumers and retailers.

82.     Thousand Oaks has continuously used, in Texas, the trademark BOOTLEG KIT at least as early as 2008 as a tagline for the BOOTLEG KIT trademark to identify its company and/or predecessor-in-interest as the source of the unique product line for consumers and retailers.

83.     Since its first advertisement and sale of the BOOTLEG KIT product in 2006, Thousand Oaks has used the "TOP SHELF" mark, which it has prominently displayed in advertising and marketing of its Bootleg Kit product, as a tagline for the trade name and product brand, in print advertisements and brochures, on multiple websites on the Internet, and other promotional and marketing materials.

84.     The TOP SHELF mark has become synonymous with the Bootleg Kit mark and product as a whole, reflecting Thousand Oaks' products and values.

85.     Thousand Oaks has acquired strong common law trademark rights in its TOP SHELF mark through extensive use in Virginia, Texas, and in interstate commerce in connection with Plaintiff's business activities in multiple states.

86.     Thousand Oaks' TOP SHELF mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Thousand Oak's extensive use, sales, marketing, and advertising in Virginia, Texas, and the United States.   Thousand Oak's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

87.     Competitors to Thousand Oaks in Texas have unlawfully directly and deliberately copied and/or used the TOP SHELF mark or confusingly similar versions of the TOP SHELF mark, reinforcing the trademark's recognized commercial success and secondary meaning.

88.     As a result of Thousand Oaks' efforts, the quality of its Bootleg Kit product, and its promotions, Thousand Oaks' TOP SHELF mark has become prominently placed in the minds of the public.  Members of the public have become familiar with Thousand Oaks' TOP SHELF

mark, and have come to recognize the mark and product and associate them exclusively with Thousand Oaks. Thousand Oaks has acquired a valuable reputation and goodwill among the public as a result of such association.

89. The TOP SHELF mark is inherently distinctive, but has also become a distinctive indication of the origin and high level of quality of Plaintiff's products as a result of Plaintiff's extensive use, sales, marketing, and advertising in Virginia, Texas, and the United States. Plaintiff's mark therefore acts as an indication of the source of Thousand Oaks' products and assures customers of a high level of quality, appeal, and satisfaction with which Plaintiff's products have become synonymous.

90. By using Thousand Oaks' TOP SHELF mark for approximately a decade in interstate commerce and Virginia commerce, and at least eight years in Texas commerce, Thousand Oaks has developed significant and valuable goodwill in its mark in the industry and with the public, and the mark has also acquired secondary meaning.

## THE THOUSAND OAKS INSTRUCTIONS

### A. The Bootleg Kit and Instruction Cards

91. Thousand Oaks includes a card with product instructions and answers to Frequently Asked Questions with each order of a mini oak aging barrel. The contents of the New Barrel card were authored by Thousand Oaks and are intended to provide customers with accurate and helpful information since most customers have never aged spirits in an oak barrel before.

92. A collection of Thousand Oaks Bootleg Kit Cards was deposited for copyright registration. (*See, e.g.,* **Exhibit M**).

### B. The Cleaning Kit

93.     Thousand Oaks' Cleaning Kit includes a card with product instructions and answers to how to clean or sterilize a Thousand Oaks' oak barrel. The contents of the Cleaning Kit card were authored by Weisberg for Thousand Oaks and are intended to provide its customers with accurate and helpful information since most customers have never cleaned or sterilized an oak barrel before. Some of the language on the card dates back to 2003, where instructions were placed on the first publication of Thousand Oaks' Website. By 2008, Weisberg's own trial-and-error work cleaning and sterilizing oak barrels caused Weisberg to update the Cleaning Kit instructions on the Thousand Oaks' website, which became longer and more detailed.

94.     A typed copy of the 2008 Cleaning Kit instructions from the Thousand Oaks 2008 Website Copyright is included in the table in **Exhibit Q**.

## CERTAIN THOUSAND OAKS PRODUCTS

### A.     *The Bootleg Kit*

95.     The Thousand Oaks Bootleg Kit product was created, designed, and developed by Mr. Weisberg for Thousand Oaks. By 2006, Thousand Oaks was advertising and selling the Bootleg Kit on the Thousand Oaks' website, direct retail sales, and to wholesale partners nationwide. It was, and remains, Thousand Oaks' most successful product. (*See, e.g.,* **Figure** 3).

**Figure 3**
Source: <www.1000oaksbarrel.com>

96.     The Thousand Oaks Bootleg Kit product was created, designed, developed, and manufactured by Thousand Oaks through the expenditure of significant time, labor, skill and money

97.     In early 2006, Mr. Weisberg had the idea to create a product that would recreate the scandalous nature of past moonshine activities. Weisberg located a flavoring company and worked together with the company to produce flavors that mimicked the tastes of known styles of spirit i.e. Bourbon, Rum and Scotch. These flavorings, and the fact that the small oak barrels Thousand Oaks produces will age spirits up to ten times faster than commercial sized barrels, made the perfect foundation for a great new product for spirit lovers.

98.     Over the course of the next two years, Mr. Weisberg and his flavoring supplier created 38 different flavors. Mr. Weisberg personally produced all the art, wrote consumer instructions and oversaw the complete production of the product development. Thousand Oaks launched the Bootleg kit in Oct 2006 and it has been hugely successfully, selling as product online, through national distributors and at wine and beer festivals.

### B.      The Cigar Infusion Barrel

99.     The Cigar Infusion Barrel product was created, designed, developed, and manufactured by Thousand Oaks in 2007 through the expenditure of significant time, labor, skill and money.  (See **Figure 4**).

**Figure 4**
Source: <www.1000oaksbarrel.com >

Canadian Rye Whisky Cigar Infusion
Barrel™ Humidor



100. On or about late 2006, Mr. Weisberg was attending a wine festival in Virginia to advertise and sell Thousand Oaks' wood oak barrels and other products. At the time, Mr. Weisberg was also offering hand-made cigars as an accompanying product to the customers interested in aging distilled spirits in wood oak barrels.

101. Mr. Weisberg was inspired to attempt flavoring cigars in a Thousand Oaks barrel, and gathered three mini-barrels that had separately aged rum, whiskey, and bourbon in them, and cut holes in the head to could fit his arm and cigars through. Weisberg fashioned lids for the hole from the cut pieces and filled each of the pre-soaked spirit barrels with cigars. Within a few days Mr. Weisberg smoked one of his infused cigars and determined that the barrel flavor was transferred to the cigar. Unfortunately the experiment was not finished.

102. Over a number of weeks, Mr. Weisberg realized that the cigars in the barrel would dry out over time and that the Cigar Infusion Barrel required a way to keep the cigars fresh. After performing significant research and testing, he found an elegant solution in a

product called a water pillow, which is a dried crystal that, when in contact with water, expands and holds the liquid for many weeks when placed inside the Cigar Infusion Barrel product.

103.    This ingenuity, hard work and dedication to his creative idea turned into the Thousand Oaks' Cigar Infusion Barrel product.  By 2007, Thousand Oaks began production of the first Cigar Infusion Barrel product as a flavor-inducing humidor for commercial sale in the United States, and it quickly became a commercial success selling in the United States, Virginia, and Texas, and continues to present day.

## C.    The Wedding Barrel

104.    The Wedding Barrel product was created, designed, developed, and manufactured by Thousand Oaks in 2010 through the expenditure of significant time, labor, skill and money.  (*See, e.g.*, **Figure** 5).

**Figure 5**
Source: <www.1000oaksbarrel.com>



105.    In the summer of 2008, a vineyard asked Mr. Weisberg if Thousand Oaks would rent some small barrels to place on tables for a wedding at the winery.  Upon delivering the barrels Weisberg overheard the couple soon to be married ask where guests can put their cards and cash gifts.  That sparked the idea for the Wedding Barrel.

106.    Mr. Weisberg immediately went to work designing a barrel to hold gift cards and be able to be personalized with the wedding couples name and wedding date.  Weisberg realized

he needed to make a trap door and a way to make a card hole in the barrel without destroying the integrity of the barrel. After numerous revisions and thousands of dollars, the Wedding Barrel was born. The product was officially launched by Thousand Oaks online in September, 2009 and is one of Thousand Oaks' best-selling products. The Thousand Oaks Wedding Barrel products have been a huge commercial success and have been sold in the United States, Virginia, Texas, and internationally, and are now in numerous internationally known catalogs.

### D.     The Oak Barrel Mug

107.    The Oak Barrel Mug product was created, designed, developed, and manufactured by Thousand Oaks in 2007 through the expenditure of significant time, labor, skill and money. (See **Figure 6**).

**Figure 6**
Source: <www.1000oaksbarrel.com>



108.    On or about 2007, Thousand Oaks was awarded the opportunity to sell its oak barrels as a guest vendor at the Maryland Renaissance Festival. Mr. Weisberg noticed that many of the Renaissance Festival staff had period style beer mugs attached to their costume belts. The staff would unhook their mugs from their belts and order a beer which was served in their personal mug. Mr. Weisberg noticed this and in true entrepreneurial form, recognized the opportunity and was inspired to create a new product line.

109.    The following week Mr. Weisberg created and designed the Oak Barrel Mug. To create a prototype, he carefully selected and hand cut pieces of wood oak used in Thousand Oaks barrels, and assembled the pieces with custom-cut metal bands to form the cup portion. Mr. Weisberg also created a wooden handle for the mug, and figured out how to attach the handle to the cup portion so that the handle would remain securely attached when the mug was full and being used.  The prototype was a success, and Thousand Oaks began preparing the specially cut pieces of oak went into production for the following weekend.  The product became a huge commercial success.

110.    Since its creation, Thousand Oaks Oak Barrel Mugs are a staple at Renaissance Festivals throughout the U.S. and sold online through numerous catalogs and web sites.

## THE THOUSAND OAKS TRADE SECRETS

111.    Thousand Oaks owns a database of supplier information, customer information, proprietary art, and other confidential business information that is kept on a secured corporate computer network.  The network requires a user identification and password to access its contents.

112.    Thousand Oaks undertakes reasonable precautions to maintain its client and business information as confidential and grants access only to those authorized employees. Those employees are instructed that they are under an obligation of confidentiality not to disclose the confidential information on the network to anyone outside of Thousand Oaks.

113.    Thousand Oaks' confidential supplier list and customer list and other confidential business information are of substantial economic value to Thousand Oaks and provide Thousand Oaks with a competitive advantage in the marketplace.

114.     The contact information for barrel suppliers is particularly valuable information for Thousand Oaks. In the late 1990's and early 2000's, Mr. Weisberg on behalf of Thousand Oaks, spent considerable time, effort, and money traveling to northern Mexico to meet and evaluate barrel coopers in the Tequila area and Guadalajara. Weisberg found that only a few of the coopers, most of whom made barrels for the tequila distilleries, were capable of making small oak barrels to high standards of U.S. bourbon barrel quality.

115.     Upon information in belief, in 2010 none of the Mexican barrel suppliers identified by Weisberg as capable suppliers maintained U.S. based websites nor advertised in the U.S.

116.     Thousand Oaks' kept and maintained the confidential contact information for its barrel suppliers in a confidential supplier list file on the secured Thousand Oaks computer network.

117.     Thousand Oaks kept no other copies of the supplier list nor shared the list with anyone outside of Thousand Oaks' administrative staff.

118.     On or about 2006, Weisberg on behalf of Thousand Oaks identified a supplier of wood barrel cleaning solutions. Mr. Weisberg had worked directly and extensively with the supplier to develop a specialized Thousand Oaks Cleaning Kit as wells as to author proper instructions for cleaning, storing, and sterilizing oak barrels using the supplier's cleaning products. In 2009, Thousand Oaks was the only company in the industry that created and sold a packaged cleaning kit like the Thousand Oaks Cleaning Kit.

119.     The identity of the Cleaning Kit supplier was not printed on the Thousand Oaks Cleaning Kit. The identity of the Cleaning Kit supplier was confidential information kept on the secured Thousand Oaks computer network.

120.    The Thousand Oaks Cleaning Kit supplier identification information was highly valuable, confidential information kept on the Thousand Oaks computer network and gave Thousand Oaks a competitive advantage.

121.    After many years of trial-and-error, by 2007 Weisberg had created and developed specialized customer sales techniques, event booth configuration techniques, and pricing models for Thousand Oaks products. The Thousand Oaks customer sales techniques, event booth configuration techniques, and pricing models are proprietary and kept confidential among Thousand Oaks' employees and contractors.

122.    Thousand Oaks' customer sales techniques, event booth configuration techniques, and pricing models are of substantial economic value to Thousand Oaks and provide Thousand Oaks with a competitive advantage in the marketplace.

**FACTS RELATED TO**
**DEEP SOUTH'S WRONGFUL AND INFRINGING ACTIVITIES**

123.    This action against Defendants Deep South LLC (hereinafter "Deep South"), Jonathan Emmons, Elissa Emmons, and Randall Bentley arises out of Deep South's operation of a business co-owned by Bentley, an employee of Thousand Oaks' at the Manassas, Virginia headquarters who conjured up an entire business in Texas based on copying Thousand Oaks' intellectual property and innovative product lines, and that from the beginning of its creation has methodically and wrongfully copied and continues to copy Thousand Oaks' intellectual property and such product lines.

124.    Instead of competing fairly by undertaking the extensive investment required to design new products and brands, Deep South copied Thousand Oaks' barrel engraving designs, trademarks, website content, and leading product lines to operate a business by unlawfully

29

trading off of Thousand Oaks' valuable assets and goodwill, which has caused, and continues to cause, irreparable harm to Thousand Oaks.

125.    Upon information and belief, Defendant Deep South is a national supplier of oak barrel products in the United States, including Virginia, and a direct competitor of Thousand Oaks.    Attached as **Exhibit O** are pages copied from Deep South's website located at <www.deepsouthbarrels.com> describing its business.  The Deep South website is an active E-commerce website that allows an individual retail customer to select from a list of products including wood barrels and wood barrel related products, purchase the products, and pay to have the products shipped to the customer.  Deep South also distributes its products wholesale to other small barrel retailers throughout the United States that sell to consumers in retail stores and via E-commerce websites.

126.    Deep South has directed its online sales activity through its website <www.deepsouthbarrels.com> into Virginia by advertising, marketing, promoting, offering, selling, and distributing products at issue in the causes of action in this case.  In multiple instances, on information and belief, Virginia residents residing in this District have ordered products from the Deep South website and received Deep South products at issue in this case into Virginia.  Deep South markets, promotes, offers to sell, and sells its products through other online storefronts into Virginia such as <www.Amazon.com>, <www.Etsy.com>, through resellers across the United States, and on social media sites including Facebook[®] and Twitter[®].

127.    Deep South maintains an ongoing relationship with its customers by requiring online customers to become registered website users.  Users are required to agree to Terms and Conditions and submit their billing address, shipping address, and email address in order to purchase products.  After a user pays for the product, the Deep South website stores the content

for the user to access the order information. Deep South also regularly reaches out to registered users in Virginia by providing periodic emails to registered users, fostering an ongoing relationship between Deep South and Virginians. The emails encourage users to purchase additional Deep South products by providing coupons for discounts on Deep South products and links to products for purchase on the Deep South webpage. The emails also promote Deep South Barrels products to registered Virginia users by providing statements of quality and warranty guarantees for Deep South products. The Deep South products promoted in the emails include products at issue in causes of action in this case.

128.    The history between Deep South and Thousand Oaks began in 2008, when Mr. Weisberg hired Defendant Randall Bentley as an employee at the Thousand Oaks facility in Manassas, Virginia. In 2008, Mr. Bentley was a resident of Virginia and, upon information and belief, resided in Manassas, Virginia. Mr. Bentley had no prior experience in barrel-making, barrel product promotion, or any other product lines or aspects of Thousand Oaks' business. Mr. Weisberg and Thousand Oaks employees trained Mr. Bentley to promote and sell Thousand Oaks' product lines at events such as fairs and festivals held in the region around and including Washington D.C., Maryland, and Virginia.

129.    As part of his duties, Mr. Bentley was required to sign a log sheet recording a number of pre-manufactured and/or assembled products (e.g., oak barrels and Bootleg Kits) that he would remove from the Manassas, Virginia facility and sell on-site at an event. Mr. Bentley was required to sign in the log sheet the unsold products and return the products to the facility. Mr. Bentley was paid the difference of the predetermined cost of the product to Thousand Oaks and the retail price sold to customers at the event. Bentley's expenses for travel to and from events were the responsibility of Mr. Bentley. Thousand Oaks would occasionally provide

Bentley with a loan of money prior to an event that Bentley would use to pay for his expenses. As part of his duties, Mr. Bentley had access to Thousand Oaks' computer network. Thousand Oaks provided Mr. Bentley with a user I.D. and password so that he could log into the Thousand Oaks' computer network in order to log his sales transactions and submit internal requests to manufacture additional products for future events.

130.     Approximately a year later, in 2009, Mr. Bentley informed Mr. Weisberg that Bentley's father had died and he needed to visit Texas for the funeral. Approximately two or three days after Bentley had gone, Bentley's wife and at least one other associate of Bentley called Mr. Weisberg inquiring into the whereabouts of Bentley, and informed Mr. Weisberg that Bentley had stored a significant number of new Thousand Oaks oak barrels and other products at their homes. Thousand Oaks was not aware of missing products during the course of Bentley's employment; however after inventorying the returned product and auditing the manufacturing and sales figures, Thousand Oaks discovered approximately retail $10,000 worth of unaccounted-for product and front-loaded expense money over the time period of Bentley's employment.

131.     Bentley's whereabouts were unknown to Thousand Oaks until after Bentley formed Deep South Barrels. Thousand Oaks has never formally terminated Bentley's employment, and Bentley has never formally resigned from Thousand Oaks' employment.

132.     Upon information and belief, on or about June, 2010 Deep South Barrels LLC was registered as a limited liability company in Texas, naming Randall Bentley as the managing member, and Jonathan Emmons and Elissa Emmons as the other members .

133.     On or about the summer of 2014, Weisberg confronted Bentley during a trade show they were each attending in San Jose, CA. Weisberg spoke to Bentley stating, in part, that

Bentley and Deep South were infringing Thousand Oaks' intellectual property rights and all of Bentley's and Deep South's infringing activities must cease. Weisberg's wife was present during the conversation and was witness to the conversation.

### A. Trade Secret Misappropriation

134.    As part of his employment duties for Thousand Oaks, Bentley was provided a user identification and password that allowed Bentley to access to the Thousand Oaks' computer network system. Mr. Bentley was informed by Weisberg that the information contained on the Thousand Oaks computer network was confidential and proprietary, and that Bentley must not share the login credentials or the confidential information with others outside of Thousand Oaks.

135.    As part of his employment duties for Thousand Oaks, Bentley was trained by Weisberg in Thousand Oaks' proprietary and confidential customer sales techniques, event booth configuration techniques, and pricing models. Bentley was informed not to disclose the techniques to anyone besides Thousand Oaks' personnel or others authorized by Weisberg.

136.    On information and belief, on or about the first quarter of 2010, Mr. Weisberg received communication from a Thousand Oaks' barrel supplier partner in Mexico, that Defendant Jonathan Emmons had contacted the Mexican partner about supplying small oak barrels to Mr. Emmons.

137.    In 2014, at the industry trade show in California, Mr. Weisberg observed a Deep South event booth displaying the Deep South product lines. Weisberg observed that the Deep South booth was set up according to the proprietary event booth configuration techniques developed by Weisberg. Weisberg further observed at the event, and subsequently gathered information since the event, that the Deep South customer sales techniques and pricing models

incorporate the Thousand Oaks proprietary confidential customer sales techniques, and pricing models.

138.     Deep South has benefited from the misappropriation of the Thousand Oaks confidential and proprietary and customer sales techniques, event booth configuration techniques, and pricing models, providing an unfair business advantage that cost significant time, resources, and money for Thousand Oaks to research and create.

139.     Thousand Oaks has been damaged and continues to be damaged by the misappropriation of the Thousand Oaks confidential and proprietary and customer sales techniques, event booth configuration techniques, and pricing models in an amount to be determined at trial.

140.     After Mr. Weisberg observed the Deep South booth, he realized that Defendant Bentley must have passed Weisberg's confidential supplier information to Emmons, who, on information and belief, subsequently ordered and received barrels from at least one of the Mexican barrel suppliers from the Thousand Oaks' confidential barrel supplier list.   Mr. Weisberg spent significant time, money, and resources from 2003 to 2009 traveling to Mexico at least seven times researching barrel manufacturing opportunities in rural areas and addressing quality and resource issues with existing manufacturers.   On information and belief, Mr. Emmons could not have known the identity and telephone numbers of such barrel suppliers in the Thousand Oaks confidential barrel supplier list without gaining the confidential information from Bentley.

141.     On information and belief, Bentley could not have known the identity and telephone numbers and whereabouts of the Thousand Oaks barrel suppliers unless Bentley

gained the confidential information from the secured Thousand Oaks computer network while Bentley was in Virginia.

142.     On information and belief, before Defendant Randall Bentley left Virginia, Bentley misappropriated the Thousand Oaks confidential supplier list from the Thousand Oaks computer network and shared the Thousand Oaks confidential supplier list with Defendants Jonathan Emmons and Elissa Emmons who used the list to locate barrel suppliers for the benefit of Defendant Deep South.

143.     On information and belief, Mr. Emmons misappropriated the Thousand Oaks confidential information in the form of Thousand Oaks' confidential barrel supplier list to contact barrel suppliers in Mexico and order oak barrels that, without the Thousand Oaks confidential supplier list, would take significant time, money, and travel through Mexico to create.

144.     On information and belief, prior to and after formation of Deep South Barrels LLC Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley misappropriated Thousand Oaks' trade secrets by using the Thousand Oaks confidential supplier list to contact Mexican barrel suppliers.

145.     Based on information and belief, Deep South has supplied other competitors of Thousand Oaks with oak barrels manufactured in Mexico by at least one of the barrel suppliers on the Thousand Oak confidential supplier list.  On information and belief, the vast majority of small barrel retailers in the United States are supplied by either Thousand Oaks or Deep South Barrels.

146.    Deep South has benefited from the misappropriation of the Thousand Oaks confidential supplier list unfairly, providing an unfair business advantage that cost significant time, resources, and money for Thousand Oaks to research and create.

147.    Thousand Oaks has been damaged and continues to be damaged by the misappropriation of the Thousand Oaks confidential supplier list in an amount to be determined at trial.

148.    On or about 2012, Weisberg was informed by the supplier for the Thousand Oaks Cleaning Kit, that Defendant Bentley had contacted the supplier about supplying similar cleaning kits to Deep South Barrels.

149.    Defendant Bentley could not have known the identity of the Cleaning Kit supplier without gaining the information from the secure Thousand Oaks computer network while Bentley was in Virginia.

150.    Deep South has benefited from the misappropriation of the Thousand Oaks Cleaning Kit supplier information unfairly, providing an unfair business advantage that cost significant time, resources, and money for Thousand Oaks to research and create.

151.    Thousand Oaks has been damaged and continues to be damaged by the misappropriation of the Thousand Oaks confidential Cleaning Kit supplier information in an amount to be determined at trial.

152.    The trade secret misappropriations by Defendants Bentley, Elissa Emmons, Jonathan Emmons, and Deep South Barrels LLC were performed intentionally, purposefully, and recklessly.

153.    Deep South built the foundation of its business based on the misappropriation of Thousand Oaks' trade secrets, and the balance of the equities favors preliminary and permanent injunctive relief to restrain and enjoin Deep South's wrongful acts from continuing in the future.

### B. The Infringing Barrel Designs

154.    Thousand Oaks owns a collection of barrel head graphic designs that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial Nos. 1-3893823846  (See **Exhibit A**), 1-3893823982 (See **Exhibit B**), 1-3893824048 (See **Exhibit C**), 1-3806696071  (See **Exhibit H**), 1-3893823781 (See **Exhibit I**), 1-3806240001  (See **Exhibit J**), and 1-3806314352  (See **Exhibit K**).

155.    Upon information and belief, Deep South markets, advertises, manufactures, offers for sale, sells, and distributes oak barrels in the United States and Virginia that incorporate barrel head graphics the same as, or substantially similar to, or derived from, the Thousand Oaks' copyright works of barrel head designs including designs in copyright applications Serial No. 1-3893823846, Serial No. 1-3893823982, Serial No. 1-3893824048, Serial No. 1-3806240001, 1-3806696071, and Serial No. 1-3806314352.

156.    Without authorization or permission from Thousand Oaks, Deep South through <www.deepsouthbarrels.com>, <www.amazon.com>, Facebook, and other websites, Deep South displays graphics and photographs of products, and sells such products, that incorporate and are substantially similar to, the same as, or derived from, Thousand Oaks' copyrighted barrel head graphics to advertise and promote Deep South products in order to sell Deep South products to consumers in Virginia and the United States.

157.    In one example, the Thousand Oaks "P5 Design" (included as a design in U.S. Copyright applications case Serial Nos. 1-3893823982  (See **Exhibit B**), 1-3806696071  (See

**Exhibit H)**, 1-3806240001 (See **Exhibit J**), and 1-3806314352 (See **Exhibit K**)) is a barrel graphic design owned and authored by Thousand Oaks.

158.    On information and belief, Deep South advertises a barrel, manufactured by Deep South, on the Deep South Barrel Facebook page. The caption under a photograph of the barrel states "Photos of Deep South Barrels." The photograph includes a "Deep South Barrels Cleaning Kit" adjacent the barrel. (*See, e.g.,* **Figure 7**).

**Figure 7**
Source:  Facebook website < hwww.facebook.com/DeepSouthBarrels/>, 7/8/2016



159.    Upon information and belief, the Deep South barrel in **Figure 7** has an engraved copy of the Thousand Oaks' barrel head graphic P5, and is the same as, or substantially similar to, or derived from, and infringes upon, the copyrighted Thousand Oaks' P5 Design.

160.    The copyrightable aspects of the P5 Design infringed by Deep South include the arrangement and spacing of text and graphics. The rows of certain text of the P5 Design is intended to be customizable with a customer's name, location, and date. (*See, e.g.,* **Figure 8**). The Deep South barrel incorporates or derives from the above-listed aspects of the Thousand Oak's P5 Copyrights.

**Figure 8**

Deep South Source: Facebook website < www.facebook.com/DeepSouthBarrels/>, 7/8/2016

| Thousand Oaks P5 Design | Deep South Design |
|---|---|
|  | |

161.     Upon information and belief, Deep South has manufactured and sold barrels incorporated with Thousand Oaks' P5 design, or a substantially similar infringing design, to retail customers, and has manufactured and sold barrels incorporated with the P5 design, or a substantially similar infringing design, on a wholesale basis to an online E-commerce retail Internet web site.

162.     Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized Thousand Oaks Copyrights of barrel head graphics without permission.

163.     By improperly utilizing Thousand Oaks' Copyrights of barrel head graphics on its website and on goods manufactured, sold and/or distributed by Deep South, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### C.    The Infringing Website

164.    Deep South's website <www.deepsouthbarrels.com> ("Infringing Website") was created by Deep South beginning in 2010 to compete head-to-head with Thousand Oaks' Website.

165.    Thousand Oaks owns the web site <www.1000oaksbarrel.com> for which: (1) a collection of Thousand Oaks 2003 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568341 (See **Exhibit D**), (2) a collection of Thousand Oaks 2008 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823596 (See **Exhibit E**), (3) a collection of Thousand Oaks 2010 Website pages that deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3809568847 (See **Exhibit F**), and (4) a collection of Thousand Oaks 2014 Website pages were deposited for copyright registration with U.S. Copyright Office and assigned case Serial No. 1-3893823680 (See **Exhibit G**), (hereinafter the "Website Copyrights").

166.    Instead of competing fairly by undertaking the extensive investment required to author new content for a new website, Deep South carefully and methodically copied large chunks of Thousand Oaks' Website Copyrights over a multi-year period including but not limited to descriptions of barrel construction materials, instructions for a curing a barrel, instructions for cleaning a barrel, Frequently Asked Questions ("FAQ") by customers, and barrel product descriptions ("Copied Content").

167.    Upon information and belief, the Copied Content was included into the Infringing Website for promoting, advertising, accompanying, and/or selling competing goods to

consumers in the same or related channels of commerce as Thousand Oaks' products in Virginia and the United States.

168.    The Copied Content, embodied in the Website Copyrights, was copied and/or derived by Deep South and has been and/or is now also provided on the Infringing Website. In many cases every word of the Copied Content is identical to the original works of authorship created by Thousand Oaks and in other cases large portions are taken and derived from Thousand Oaks' original works of authorship.  The tables in **Exhibit P** are illustrative of the aforesaid copying, and shows that the materials posted to the Infringing Website are at least substantially similar to the original works of authorship created by Thousand Oaks and claimed in the Website Copyrights.

169.    The content of the Website copyrights were and are accessible to anyone with an Internet connection to the public site <www.1000oaksbarrel.com>.  Bentley, being associated with Thousand Oaks as an employee, would be familiar with the Thousand Oaks' Website and its contents.

170.    In one instance of many, in 2008 Thousand Oaks wrote instructions in answer to a question about a leaking barrel: "*I left my barrel dry for an extented [sic] time.  Now it leaks... what do I do?  In many cases just re-cure the barrel.*"  Five years later, Deep South wrote on the Infringing Website, "*I left my barrel dry for an extended time.  Now it leaks... what do I do?  You can try to re-cure the barrel. . . .*"  (See **Exhibit P**).

171.    Without authorization or permission from Thousand Oaks, Deep South through <www.deepsouthbarrels.com> is using the Copied Content from the Thousand Oaks Website Copyrights on the website <www.deepsouthbarrels.com> to promote Deep South oak barrel

products, including the products at issue in this case, to prospective new customers and to provide information to prospective and existing customers.

172.    Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the Copied Content from the Thousand Oaks Website Copyrights without permission.

173.    By improperly utilizing Thousand Oaks' Website Copyrights on <www.deepsouthbarrels.com>, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### D. The Infringing Product Instructions

174.    Upon information and belief, Deep South advertises, offers, sells, and distributes a "Deep South Barrels Cleaning Kit". (*See., e.g.,* **Figure 9**).

**Figure 9**
Source: Order Received From < www.deepsouthbarrels.com >



175.    Upon information and belief, since at least 2010 Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized certain product instructions owned and written by Thousand Oaks for the Thousand Oaks' Cleaning Kit (the "Copied

42

Instructions") and embodied in the Thousand Oaks Website Copyrights as instructions for the Deep South Cleaning Kit.

176.    Instead of competing fairly by undertaking the extensive time, resources, and money required to research and create a barrel cleaning kit and author new content for how to clean and care for a wooden barrel, Deep South carefully and methodically copied large chunks of Thousand Oaks' Website Copyrights, including at least the Copied Instructions from the Thousand Oaks' 2008 website, embodied in copyright case Serial No. 1-3893823596, for Deep South's barrel cleaning kit instructions. (See **Exhibit E**).  A comparison of the Deep South Cleaning Kit instructions with the Thousand Oaks' 2008 Website content is included in the table in **Exhibit Q**.

177.    The Copied Instructions are included into the Deep South Cleaning Kit for accompanying, and/or selling many of the competing goods at issue in the causes of action in this case, including at least one Deep South Bootleg Kit shipped to and delivered in Virginia in 2016.

178.    On information and belief, the Copied Instructions, originally authored by Thousand Oaks, were copied by Deep South and has been and/or is now also provided on the Deep South Website.

179.    In many cases, every word of the Copied Instructions is identical to the Thousand Oaks Website Copyrights and in other cases large portions are taken and derived from the Website Copyrights.  The table in **Exhibit Q** is illustrative of the aforesaid copying, and shows that the content of the Deep South Cleaning Kit, described above, is substantially similar to, and in many cases word-for-word as, the Website Copyrights.

180.    Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the Cleaning Instructions from Thousand Oaks without permission.

181.    By improperly utilizing Thousand Oaks' Website Copyrights for the Deep South Cleaning Kit, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

### E. The Infringing Trademarks

#### 1. BOOTLEG KIT MARK

182.    On information and belief, since at least 2013, Deep South copied Thousand Oaks' distinctive mark BOOTLEG KIT in a direct and intentional manner as a mark for the same or similar goods.

183.    Thousand Oaks began has used its BOOTLEG KIT mark since 2006 in Virginia and interstate commerce and since 2008 in Texas for goods that each include a mini wood barrel, at least one flavor essence, and instructions for using the goods that have been branded, advertised and sold by Thousand Oaks.

184.    On information and belief, Deep South's direct and intentional use of the mark BOOTLEG KIT, which is the exact same mark as the Thousand Oaks BOOTLEG KIT mark for similar classes of goods, is likely to confuse consumers as to the source of the product.    (See **Figure 10**).

**Figure 10**
Source: Deep South website < www.deepsouthbarrels.com>, 8/3/2016

 

185. Upon information and belief, no later than 2010, which was five years after Thousand Oaks commenced use and established its goodwill and trademark rights in the mark BOOTLEG KIT, Deep South began using the mark "BOOTLEG BOX" on its website <www.deepsouthbarrels.com> and product line as a brand name for a combination product of an oak barrel and an essence flavoring to add to the barrel when aging a distilled spirit that is the same or similar to the Thousand Oaks BOOTLEG KIT product.

186. Upon information and belief, Deep South directly and intentionally used the mark BOOTLEG BOX, which is confusingly similar to Thousand Oaks' BOOTLEG KIT mark for similar goods and likely to confuse consumers as to the source of the product.

187. Upon information and belief, Deep South has promoted, advertised, and/or caused or is causing goods identified with the marks BOOTLEG BOX or BOOTLEG KIT to enter into commerce in Virginia and interstate commerce in the United States via its ecommerce website <www.deepsouthbarrels.com> and other online Internet storefronts, and its retail booths or stores in least thirty events, festivals, and fairs per year in at least seven different states.

188.	On information and belief, Deep South's direct and intentional use of the mark BOOTLEG KIT, which is the exact same mark as the Thousand Oaks BOOTLEG KIT mark for similar classes of goods, is likely to confuse consumers as to the source of the product.

189.	Thousand Oaks did not grant permission to Deep South to utilize its BOOTLEG KIT mark or confusingly similar marks. Deep South knowingly, willfully, and with malicious intent, directly and intentionally took and utilized the BOOTLEG KIT mark from Thousand Oaks without permission.

190.	Since 2010, Deep South has promoted, advertised, and/or sold goods branded as a BOOTLEG BOX or BOOTLEG KIT in the United States, Virginia, and this District and as a result, intentionally directed harm towards Thousand Oaks in this District.

191.	By improperly utilizing the BOOTLEG KIT mark or the confusingly similar BOOTLEG BOX on its competitive goods in the same or similar channels of trade, Deep South has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

192.	Thousand Oaks did not grant permission to Deep South to utilize the Thousand Oaks BOOTLEG KIT mark. Deep South knowingly, willfully, and with malicious intent, intentionally deliberately, and recklessly took and utilized the Thousand Oaks BOOTLEG KIT mark from Thousand Oaks without permission.

193.	Upon information and belief, Deep South declares on its website <www.deepsouthbarrels.com> that "Deep South Barrels begin and end with premium quality American White Oak, which is the same as most distillers and wineries use." (*See, e.g.*, **Exhibit O**).

194.     Upon information and belief, for at least some of its barrels manufactured for the Deep South Bootleg Kit, Deep South uses wood reclaimed from used tequila barrels in Mexico, which is not "premium quality American White Oak" wood.

195.     Upon information and belief, the Deep South BOOTLEG KIT barrels are of inferior quality as the Thousand Oaks' BOOTLEG KIT barrels, which are manufactured using new American White Oak wood that has been aged for at least two years. By improperly using a statement of quality for its goods while manufacturing and selling inferior barrels, Deep South has tarnished the strength of Thousand Oaks' BOOTLEG KIT mark and has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

196.     Deep South's deliberate and intentional infringement of Thousand Oaks' BOOTLEG KIT mark on the same or similar goods in the same channels of commerce is likely to cause confusion with the public, and has caused and continues to cause confusion among customers, and has irreparably harmed and continues to irreparably harm Thousand Oaks' reputation and the Thousand Oaks mark. Harm escalates each day Deep South's use and other acts complained of herein are permitted to continue.

### 2. CIGAR INFUSION BARREL MARK

197.     Upon information and belief, since at least July, 2013, Deep South copied Thousand Oaks' distinctive mark CIGAR INFUSION BARREL in a direct and intentional manner as a mark for the same or similar goods.

198.     Thousand Oaks has used its CIGAR INFUSION BARREL mark since April, 2007 in Virginia and since 2008 in Texas for barrels uniquely designed as humidors for cigars that have been been branded, advertised and sold by Thousand Oaks.

199. On information and belief, Deep South's direct and intentional use of the mark CIGAR INFUSION BARREL, which is the exact same mark as the Thousand Oaks CIGAR INFUSION BARREL mark for similar classes of goods, is likely to confuse consumers as to the source of the product.

200. The Deep South products bearing the CIGAR INFUSION BARREL mark are competitive products to the Thousand Oaks CIGAR INFUSION BARREL products. The Deep South CIGAR INFUSION BARREL product is identical to, or substantially similar as, the Thousand Oaks' CIGAR INFUSION BARREL product and sold in the same or related channels of trade.

201. Upon information and belief, Deep South has promoted, advertised, and/or caused or is causing goods identified with the CIGAR INFUSION BARREL mark to enter into commerce in Virginia and the United States via its ecommerce website <www.deepsouthbarrels.com> and other online Internet storefronts, and its retail booths or stores in least thirty events, festivals, and fairs per year in at least seven different states.

202. In addition, Deep South directly and intentionally designed its CIGAR INFUSION BARREL product to include a wood barrel standing on an end with a large oversized cork lid and handle, which is a nearly identical replica of the Thousand Oaks product in size, shape, materials, colors and appearance. The severity of Deep South's copying of the Thousand Oaks CIGAR INFUSION BARREL product is demonstrated in **Figure 11** below, which depict the Deep South CIGAR INFUSION BARREL product from various angles.

**Figure 11**

| Source: Thousand Oaks website < www.thousandoaksbarrels.com> | Source: Deep South website < www.deepsouthbarrels.com>, 8/3/2016 |
|---|---|
| Canadian Rye Whisky Cigar Infusion Barrel™ Humidor | |



203.    Thousand Oaks did not grant permission to Deep South to utilize the Thousand Oaks CIGAR INFUSION BARREL mark. Deep South knowingly, willfully, and with malicious intent, intentionally deliberately, and recklessly took and utilized the Thousand Oaks CIGAR INFUSION BARREL mark from Thousand Oaks without permission.

204.    Upon information and belief, the Deep South Cigar Infusion barrels are of inferior quality as the Thousand Oaks' CIGAR INFUSION BARREL products, which are manufactured using new American White Oak wood that has been aged for at least two years.

205.    Deep South's marketing and advertising has emphasized that it constructs its CIGAR INFUSION BARREL goods with premium American white oak. Upon information and belief, for at least some of its barrels manufactured for the Deep South CIGAR INFUSION BARREL goods, Deep South uses wood reclaimed from used tequila barrels in Mexico.

206.    By improperly using a statement of quality for its goods while manufacturing and selling inferior barrels, Deep South has tarnished the strength of Thousand Oaks' CIGAR

49

INFUSION BARREL mark and has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

207.    Deep South's deliberate and intentional infringement of Thousand Oaks' CIGAR INFUSION BARREL mark on the same or similar goods in the same channels of commerce is likely to cause confusion with the public, and has caused and continues to cause confusion among customers, and has irreparably harmed and continues to irreparably harm Thousand Oaks' reputation and the Thousand Oaks mark.    Harm escalates each day Deep South's use and other acts complained of herein are permitted to continue.

### 3.    WEDDING BARREL MARK

208.    Upon information and belief, since at least May, 2016 Deep South began using a mark incorporating Thousand Oaks' distinctive mark WEDDING BARREL in its brand names for a competing product that had been advertised and sold by Thousand Oaks since 2011.

209.    The Deep South marks, WEDDING BARREL and WEDDING CARD HOLDER OAK BARREL, are intended to identify goods that are identical to, or substantially similar to, and competitive products with the Thousand Oaks' WEDDING BARREL products. (See **Figure 12**).

**Figure 12**



| Source: <www.1000oaksbarrel.com> | Source: <www.deepsouthbarrels.com>8/3/2016 |
|---|---|

210.     Upon information and belief, Deep South has promoted, advertised, and/or sold goods identified with the WEDDING BARREL mark and caused the goods to enter into interstate commerce in the United States, Virginia, and this District.

211.     Upon information and belief, Deep South has caused and is causing goods identified with the WEDDING BARREL mark to enter into commerce in Virginia and the United States via its ecommerce website <www.deepsouthbarrels.com> and its retail booths or stores in least thirty events, festivals, and fairs per year in at least seven different states.

212.     Thousand Oaks did not grant permission to Deep South to utilize its WEDDING BARREL mark. Deep South knowingly, willfully, and with malicious intent, recklessly took and utilized the WEDDING BARREL mark from Thousand Oaks without permission.

213.     By improperly utilizing Thousand Oaks' WEDDING BARREL mark on the same or similar goods in the same channels of commerce, Deep South has caused and continues to cause irreparable harm to Thousand Oaks.

214.     Upon information and belief, the Deep South Wedding Barrels are of inferior quality as the Thousand Oaks' WEDDING BARREL products, which are manufactured specifically to furniture grade standards.

215.     By improperly using a statement of quality for its Wedding Barrel that is false, Deep South has tarnished the strength of Thousand Oaks' WEDDING BARREL Mark and has caused and continues to cause irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.    Harm escalates each day Deep South's use and other acts complained of herein are permitted to continue.

### 4. *TOP SHELF LIQUOR AT BOTTOM SHELF PRICES MARK*

216.    Upon information and belief, no later than five years after Thousand Oaks commenced use and established its goodwill and trademark rights, Deep South began using the phrase "TOP SHELF LIQUOR AT BOTTOM SHELF PRICES" as a tagline for a combination its oak barrels for a distilled spirit that is confusingly similar to Thousand Oaks' TOP SHELF TASTE AT A BOTTOM BARREL PRICE trademark. The use is found in a promotional video made    by    Deep    South    that    can    be    viewed    at <https://www.youtube.com/watch?v=YRy1oeORb1c>.

217.    Deep South's goods associated with Thousand Oaks' marks have at all times been sold and offered in the same or similar channels of trade as the Thousand Oaks' Bootleg Kit and are confusingly similar to Thousand Oaks' goods.

218.    Upon information and belief, Deep South has caused and is advertising for goods identified with the TOP SHELF LIQUOR AT BOTTOM SHELF PRICES mark to enter into commerce in the United States along with the BOOTLEG KIT mark.

219.    Deep South has no authority from Thousand Oaks directly or indirectly to utilize Thousand Oaks' TOP SHELF mark or a confusingly similar mark.

220.    In sum, despite Thousand Oaks' long use of its TOP SHELF mark, without authorization, license or consent of Thousand Oaks, Deep South has attempted to trade off the reputation, goodwill, and fame of the Thousand Oaks TOP SHELF mark, and have unfairly traded on such proprietary indicia through the manufacture, advertising, promotion, distribution, and sale of the Deep South Bootleg Kit and associated goods, which are likely to cause confusion, mistake or deception with respect to the Thousand Oaks BOOTLEG KIT product;

that is likely to cause irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

221.    Deep South's acts were done willfully and maliciously, and with the specific intent to imitate Plaintiff's property and goods, misappropriate, misuse and palm off of the goodwill, distinctiveness, fame and recognition Plaintiff enjoys in the industry.

222.    Deep South's use of Thousand Oaks' TOP SHELF mark on its in connection with Deep South's products, have caused great and irreparable harm and damage to Thousand Oaks, its goodwill, and the distinctiveness of its trademarks and brand and have impaired, blurred, disparaged, and tarnished the same.

223.    Harm escalates each day Deep South's use and other acts complained of herein are permitted to continue.

224.    Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Deep South's continued conduct.

### E. The Misappropriated Thousand Oaks Barrel Products

225.    On information and belief, at least four years after Thousand Oaks offered the Bootleg Kit product line for sale, in 2010 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Bootleg Box" product that is similar, or substantially similar, to the Thousand Oaks Bootleg Kit. By 2013, Deep South had changed the mark for its product to BOOTLEG KIT, as alleged above.

226.    The creative aspects of the Thousand Oaks Bootleg Kit product line includes the oak barrel is intended to be held lengthwise and is accompanied by a stand; the Thousand Oaks oak barrel comes with a spigot that can be inserted into a hole cut near an edge in one of the heads; the Thousand Oaks oak barrel comes with a hole in the side and a stopper made of cork

with a handle; the Thousand Oaks Bootleg Kit includes one or more flavor "essences" that can

be infused into the customer's spirits inside the barrel; and the Bootleg Kit includes a card with

abbreviated instructions on how to use the kit with a reference to the manufacturer's website for

more information.

227.    On information and belief, at least these aspects of the Thousand Oaks Bootleg

Kit product were intentionally and deliberately misappropriated by Deep South and incorporated

into the Deep South Bootleg Kit products.  (See **Figure 13**).

**Figure 13**

| Source: <www.1000oaksbarrel.com> and Thousand Oaks Bootleg Kit | Source: <www.deepsouthbarrels.com> and Deep South Bootleg Kit |
|---|---|
|  |  |
|  |  |



228.    On information and belief, six years after Thousand Oaks offered the Cigar Infusion Barrel for sale, in 2013 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Cigar Infusion Barrel" product line that is similar, or substantially similar, to the Thousand Oaks Cigar Infusion Barrel product line.

229.    The creative aspects of the Thousand Oaks Cigar Infusion Barrel include, but are not limited to; the oak barrel is intended to stand upright on one end; a round interior access opening is cut into the top head; a round exaggerated cork lid can fit in the opening and seal the opening; and an exaggerated handle is attached to the lid.    As the products are held out as humidors, a humidifying element is sold with the product.

230.    On information and belief, these aspects were intentionally and deliberated misappropriated by Deep South and incorporated in the Deep South Cigar Infusion Barrel products.

231.    On information and belief, five years after Thousand Oaks offered the Wedding Barrel product for sale, in 2016 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Wedding Barrel" that is similar, or substantially similar, to the Thousand Oaks WEDDING BARREL product.

232.    The creative aspects of the WEDDING BARREL product misappropriated by Deep South include, but are not limited to, the Deep South marks WEDDING BARREL AND WEDDING CARD HOLDER OAK BARREL are the same or confusingly similar to the Thousand Oaks' mark WEDDING BARREL; the oak barrel is intended to be held lengthwise; an opening slot at the top cut into one of the staves that is large enough to receive envelopes;  a barrel interior access opening cut into one of the heads; a cover for the opening that is formed from cork or other material. (See **Figure 12**).

233.    On information and belief, six years after Thousand Oaks offered the Barrel Mug for sale, in 2013 Deep South manufactured, advertised, promoted, offered retailed, sold, and/or distributed a knock-off "Barrel Mug" that is similar, or substantially similar, to the Thousand Oaks Barrel Mug.  (See **Figure 14**).

**Figure 14**

| Source: <www.1000oaksbarrel.com> | Source: <www.deepsouthbarrels.com> |
|---|---|



234.    The creative aspects of the Barrel Mug misappropriated by Deep South include, but are not limited to, the Thousand Oaks Barrel Mug is manufactured from an actual oak mini barrel that has had a head removed from one end; the Thousand Oaks Barrel Mug is intended to be held upright with an wood handle attached to the barrel; and the Thousand Oaks Barrel Mug has four bands around the barrel section, where the band nearest the open end is moved slightly below the rim of the opening.

235.    Upon information and belief, the Deep South Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug products to have at all times been advertised, offered for sale and/or sold, in the United States and in Virginia in the same or similar channels of commerce as the Thousand Oaks' Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug (the Thousand Oaks "Barrel Products") and Deep South caused such misappropriated goods to enter into commerce.

236.    Upon information and belief, Deep South's Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug have at all times been manufactured or distributed out of Deep South's facility in the state of Texas.

237.    The Barrel Products were created, designed, developed, and manufactured by Thousand Oaks in Virginia through the expenditure of significant time, labor, skill and money.

238.    Deep South has no authority from Thousand Oaks directly or indirectly to utilize the Barrel Products or substantially similar goods as the Thousand Oaks' Barrel Products.

239.    Deep South has used the Barrel Products designs to advertise, market, offer for sale, sell, and distribute similar or substantially similar goods, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by

Thousand Oaks in the extensive and costly design and manufacture of the Barrel Products. Deep South's acts were done willfully and maliciously, and with the specific intent to imitate Thousand Oaks' Barrel Products, misappropriate, misuse and palm off of the goodwill, distinctiveness, fame and recognition Thousand Oaks enjoys in the industry.

240.    Deep South's misappropriation of the Thousand Oaks' Barrel Products includes advertising, offering for sale, and selling on the website <www.deepsouthbarrels.com>, social media, retail stores and events in connection with Deep South's products, has caused great and irreparable harm and damage to Thousand Oaks. Harm escalates each day Deep South's use and other acts complained of herein are permitted to continue.

## VICARIOUS ACTS OF DEEP SOUTH OWNERS

241.    Upon information and belief, Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, through Deep South Barrels LLC, the company they jointly own and control, have advertised and displayed, used, manufactured, sold, and distributed images and products that incorporate Thousand Oaks' intellectual property and infringe upon the trademark rights and copyrights of Thousand Oaks.

242.    Upon information and belief, Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley and their company, Deep South Barrels LLC, reaped substantial illicit profits from their infringements of Thousand Oaks' rights. Thousand Oaks suffered and continues to suffer significant damage from Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley's wrongful actions.

243.    Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, both individually and jointly, directly induced, materially participated in, caused, and controlled the actions of Deep South Barrels LLC that, upon information and belief, to be wrongful and

constitute copyright infringement, trademark infringement, unfair competition, trade secret misappropriation, and common law misappropriation. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, had full knowledge at all relevant times of Deep South Barrels LLC's wrongful actions.

244. On information and belief, Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, both individually and jointly, at all relevant times, had the right and ability to supervise and control the infringing activities, and, as joint owners of Deep South Barrels LLC and otherwise, had a direct financial interest in those activities. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley are jointly and severally liable to Thousand Oaks directly, contributorily, and vicariously, for copyright infringement trademark infringement, and unfair competition.

245. Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Defendants Jonathan Emmons', Elissa Emmons', and Randall Bentley's continued conduct.

<u>**FACTS RELATED TO
WOOD HARBOUR'S AND MARK CARBONI'S WRONGFUL AND INFRINGING
ACTIVITIES**</u>

246. Thousand Oaks repeats and realleges each of the allegations contained in paragraphs above.

247. This action against Wood Harbour and its owner and director, Mark Carboni, arises out of operation of a business owned by a reseller partner of Thousand Oaks that became a reseller partner for Deep South Barrels. However, after adopting Deep South as its supplier, Wood Harbour continued to use Thousand Oaks' goods and intellectual property for its product

displays, advertising and sales in violation of its agreement with Thousand Oaks and in misappropriation of Thousand Oaks' intellectual property.

248.     According to his Linkedin.com profile, Mr. Carboni currently self identifies as the "Operations Manager" for Deep South Barrels at the Texas Renaissance Festival, the Scarborough Renaissance Festival, and the Arizona Renaissance Festival, in the time frame of January 2015 to Present.

249.     Instead of competing fairly by undertaking the extensive investment required to design new products and brands, Wood Harbour and Deep South worked in concerted action to use Thousand Oaks' intellectual property and leading proprietary product lines to unlawfully trade off of Thousand Oaks' valuable assets and goodwill, which has caused, and continues to cause, irreparable harm to Thousand Oaks.

250.     On information and belief, Wood Harbour went so far as to display "DEEP SOUTH BARRELS" signs on the outside and inside of its retail stores to identify Deep South as the source of its goods while keeping Thousand Oaks' packaging, brands, images, and products inside the stores and on social media pages for display, advertising, and sales of Wood Harbour's and Deep South's goods.

251.     In 2007, Mark Carboni approached Mr. Weisberg of Thousand Oaks with a request to set up Thousand Oaks Barrel stores, to be operated and managed by Carboni, within Wood Harbour's retail stores at festival sites in Texas.

252.     In an effort to expand its growing market across the United States, Thousand Oaks agreed to the Wood Harbour proposal but set conditions for the agreement. The conditions included (1) Wood Harbour would pre-pay for Thousand Oaks products ordered wholesale in bulk; (2) Thousand Oaks would send personnel to train Carboni; and (3) Wood Harbour would

grant a license to use Thousand Oaks Barrel's intellectual property including company name, trademarks, copyrights, and package labels to display, advertise and sell Thousand Oaks products so long as Wood Harbour did not sell competing products from a Thousand Oaks competitor.

253.    Wood Harbour agreed to the Thousand Oaks conditions and in 2008 placed its first wholesale order. The agreement between Thousand Oaks and Wood Harbour was an oral contract.

254.    Since Carboni had no experience in barrel manufacturing or selling Thousand Oaks' product lines, Mr. Weisberg sent Defendant Bentley to Texas in 2008 in order to train Carboni in the promotion and sales of the Thousand Oaks' Bootleg Kit and other product lines. In the following years, Weisberg personally travelled to Texas twice to assist in the sales and operations of Wood Harbour as well as sent other personnel including Defendant Bentley to train Carboni.

255.    On information and belief, in 2008 Defendant Wood Harbour began selling the Thousand Oaks Bootleg Kit and other products through Wood Harbour's retail location at the Scarborough Renaissance Festival in Texas and other retail locations.

256.    From 2008 - 2011, Wood Harbour placed and prepaid for multiple bulk product orders that were fulfilled by Thousand Oaks. Wood Harbour purchased and, on information and belief, sold Thousand Oaks products identified with the marks BOOLEG KIT, CIGAR INFUSION BARREL, and BARREL MUG in the Wood Harbour Scarborough retail shop. Wood Harbour also continuously utilized Thousand Oaks' intellectual property, images, marks, and products to display, advertise, and sell products in the Wood Harbour stores.

257.     On or about October, 2011 Carboni informed Mr. Weisberg that Wood Harbour would not be placing a holiday order from Thousand Oaks and that Wood Harbour was going to source products from Deep South Barrels.   Carboni did not state that Wood Harbour was terminating the agreement with Thousand Oaks, and Weisberg did not state that Thousand Oaks was terminating the agreement with Wood Harbour.

258.     Upon information and belief, from October, 2011- March, 2014 Wood Harbour continued to sell Thousand Oaks Bootleg Kit products, display the Thousand Oaks BOOTLEG KIT trademark, Bootleg Kit labels and packaging at the Wood Harbour Scarborough Renaissance Festival store.  **Exhibit R** includes images and photographs, dated 2012 to 2016, from the social media pages of Wood Harbour illustrating the aforesaid events and events described below.

259.     Upon information and belief, on or about March, 2014 Wood Harbour took concerted action with Deep South to open a Deep South Barrels shop inside of Wood Harbour's Scarborough retail shop in place of the Thousand Oaks Barrel shop.

260.     Upon information and belief, on or about April, 2014 Wood Harbour placed the name "Deep South Barrels" on the outside and inside of the Wood Harbour store along with Wood Harbour's company name.

261.     Upon information and belief, on or about May 2014 Wood Harbour continued to use and display Thousand Oaks Bootleg Kit products, Thousand Oaks mark, and product labels on packaging, and continue to sell Thousand Oaks Bootleg Kit products in the Scarborough Wood Harbour/Deep South Barrels retail shop while contemporaneously displaying, offering, and selling Deep South BOOTLEG KIT products.

262. In violation of the Wood Harbour-Thousand Oaks reseller agreement, Wood Harbour, upon information and belief, has been and is currently advertising, promoting, offering, and selling Deep South Bootleg Kit products at the Wood Harbour/Deep South Barrels retail shop while continuing to use, advertise, promote and/or sell Thousand Oaks Bootleg Kit products, trade off of the BOOTLEG KIT trademark, and display and trade off of Bootleg Kit product labels and packaging.

263. Without the authorization, license or consent of Thousand Oaks, upon information and belief, Wood Harbour and Deep South, in a concerted action, have attempted to trade off the reputation, goodwill, and strength of the Thousand Oaks BOOTLEG KIT trademark, Bootleg Kit product, labels, and packaging, and has unfairly traded on such proprietary indicia through the display, advertising, promotion, distribution, and sale of the Bootleg Kit and the BOOTLEG KIT trademark and labels, which is likely to cause confusion, mistake or deception with respect to the Thousand Oaks' BOOTLEG KIT mark and product; and that is likely to cause and has caused irreparable harm and other damage to Thousand Oaks, its business, and goodwill.

264. Upon information and belief, Wood Harbour has deliberately and intentionally displayed, offered, sold, and caused products manufactured by Deep South bearing the BOOTLEG KIT and/or the BOOTLEG BOX marks that is the same as, or confusing similar to, and infringes, the Thousand Oaks BOOTLEG KIT mark, to enter into commerce.

265. Upon information and belief, Wood Harbour and Deep South, in a concerted action, have wrongfully used and continue to use, images posted on Wood Harbour's Social Media sites and Deep South's social media sites, that include at least one or more Thousand Oaks BOOTLEG KIT copyrighted shipping labels and mark in order to confuse or deceive

potential customers gathering information about the Wood Harbour/Deep South retail shop as to the source of the goods.

266.     Thousand Oaks owns the product label for the 2010 Bootleg Kit being displayed and used by Wood Harbour and Deep South, which was deposited for copyright registration and assigned case Serial No. 1-3899999741 ("2010 Copyright Label"). (See **Exhibit N, Figure 15**).

**Figure 15**
Source: 2010 BOOTLEG KIT Label



267.     Wood Harbour would have been aware of Thousand Oaks' copyrighted works, trademarks, and products due to the status of Wood Harbour as a Thousand Oaks' reseller partner, the extensive training of Carboni by Thousand Oaks personnel, and the public accessibility of the Thousand Oaks website, which Carboni would have also been aware of.

268.     Upon information and belief, Wood Harbour and Deep South have acted in concert to wrongfully misappropriate the copyrighted 2010 Bootleg Kit product label in order to confuse or deceive customers as to the source of the Deep South Bootleg Kit products.

269.     Upon information and belief, Wood Harbour and Deep South have acted in concert to prominently display, in view of the public and potential and actual customers, numerous Thousand Oaks Bootleg Kit products and packaging having the 2010 Bootleg Kit product label, the BOOTLEG KIT mark, and other Thousand Oaks labels and packaging.

270. Upon information and belief, Wood Harbour and Deep South, knowingly, willfully, and with malicious intent, deliberately and intentionally took and utilized Thousand Oaks' Copyright Labels and Thousand Oaks' BOOTLEG KIT mark without permission.

271. By improperly utilizing Thousand Oaks' 2010 Copyright Labels, for advertising, displaying selling, and/or distributing Bootleg Kit products, Wood Harbour and Deep South have caused, and continues to cause, irreparable harm and damage to Thousand Oaks in an amount to be determined at trial.

272. Upon information and belief, Wood Harbour and Deep South acted in concert to use the Thousand Oaks' Bootleg Kit design, Cigar Infusion Barrel design, and the Barrel Mug ("Barrel Products") design to advertise, promote, offer for sale, and sell similar or substantially similar goods, in which Wood Harbour and Deep South have no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour and Deep South have not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of such Thousand Oaks Barrel Products.

273. Wood Harbour and Deep South have no authority from Thousand Oaks directly or indirectly to utilize the proprietary Bootleg Kit, Cigar Infusion Barrel, or Barrel Mug designs or substantially similar goods.

274. The acts of Wood Harbour and Deep South were done willfully and maliciously, and with the specific intent to use Thousand Oaks' intellectual property and imitate Thousand Oaks' Barrel Products and misappropriate, misuse, and palm off of the goodwill, distinctiveness, fame and recognition Thousand Oaks enjoys in the industry.

275. Wood Harbour's and Deep South's advertisements and display of Thousand Oaks Barrel Products and marks on social media and in Wood Harbour's shop has caused great

and irreparable harm and damage to Thousand Oaks. Harm escalates each day Wood Harbour's and Deep South's use and other acts complained of herein are permitted to continue.

276.     Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Wood Harbour's and Deep South's continued conduct.

277.     Upon information and belief, Defendant Mark Carboni and his company, Wood Harbour, reaped substantial illicit profits from their infringements and misappropriation of Thousand Oaks' rights as described herein. Thousand Oaks has suffered and continues to suffer significant damage from Defendant Mark Carboni's wrongful actions.

278.     Defendant Mark Carboni individually directly induced, materially participated in, caused, and controlled the actions of Wood Harbour that, upon information and belief, to be wrongful and constitute copyright infringement, trademark infringement, unfair competition, and common law misappropriation. Defendant Mark Carboni had full knowledge at all relevant times of Wood Harbour's wrongful actions. Furthermore, Defendant Mark Carboni individually, at all relevant times, had the right and ability to supervise and control the infringing activities, and, as owner of Wood Harbour and otherwise, had a direct financial interest in those activities. Defendant Mark Carboni is liable to Thousand Oaks directly, contributorily, and vicariously, for copyright infringement, trademark infringement, unfair competition, and common law misappropriation.

279.     Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Mark Carboni's and Wood Harbour's continued conduct.

## VICARIOUS ACTS OF WOOD HARBOUR'S OWNER

280.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

281. Upon information and belief, Defendant Mark Carboni, through Wood Harbour, the company he owns and controls, has advertised and displayed, used, sold, and distributed images and products that infringe upon the trademark rights and copyrights of Thousand Oaks.

282. Upon information and belief, Defendants Carboni and his company, Wood Harbour, reaped substantial illicit profits from their infringements of Thousand Oaks' rights. Thousand Oaks suffered significant damage from Defendant Mark Carboni's wrongful actions.

283. Upon information and belief, Defendant Carboni directly induced, materially participated in, caused, and controlled the actions of Wood Harbour that, upon information and belief, to be wrongful and constitute copyright infringement, trademark infringement, unfair competition, trade secret misappropriation, and common law misappropriation. Defendant Carboni at all relevant times, had the right and ability to supervise and control the infringing activities, and, as owner of Wood Harbour and otherwise, had a direct financial interest in those activities.

284. Upon information and belief, Defendant Carboni is jointly and severally liable to Thousand Oaks directly, contributorily, and vicariously, for copyright infringement, trademark infringement, and unfair competition.

285. Thousand Oaks has no adequate remedy at law relative to the continued and future harm expected to be suffered for Defendant Carboni's continued conduct.

## CAUSES OF ACTION

### COUNT 1: FEDERAL COPYRIGHT INFRINGEMENT
**[17 U.S.C. §501 et seq.]**
**(Against Deep South Barrels)**

286. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

287. Thousand Oaks owns a collection of barrel head graphic designs that were deposited for copyright registration with U.S. Copyright Office and assigned case Serial Nos. 1-3893823846 (See **Exhibit A**), 1-3893823982 (See **Exhibit B**), 1-3893824048 (See **Exhibit C**), 1-3806696071 (See **Exhibit H**), 1-3893823781 (See **Exhibit I**), 1-3806240001 (See **Exhibit J**), and 1-3806314352 (See **Exhibit K**) (Barrel Copyrights).

288. Thousand Oaks owns deposited copyright assigned case Serial Nos. 1-3809568341, 1-3893823596, 1-3809568847, and 1-3893823680 that are embodied by different versions of the Thousand Oaks Website (Website Copyrights).

289. Thousand Oaks owns deposited copyright assigned case Serial No. 1-3893853441 for a Bootleg Kit label and Serial No. 1-3899999741 for the 2010 Bootleg Kit label (Label Copyrights).

290. Collectively, the copyrighted works in paragraphs 270-272 are termed the "Copyrighted Works."

291. Defendant Deep South Barrels had access to the Thousand Oaks Copyrighted Works because, *inter alia*, the Copyright Works have been and/or are available on the Thousand Oaks Website <www.1000oaksbarrel.com> and are publicly accessible by the Internet. Any member of the public may purchase products embodying certain of the Copyright Works from Thousand Oaks retail booths, retail partners, or the <www.1000oaksbarrel.com> website. Moreover, Defendant Bentley worked at the Manassas, Virginia facility of Thousand Oaks and by virtue of his employment would have been familiar with the Thousand Oaks Website and Copyrighted Works.

292. Defendant Deep South Barrels has notice of Thousand Oaks' original works of authorship and copyright rights embodied by the Copyrighted Works.

293. Without permission, Deep South Barrels intentionally and knowingly directed, participated in, and/or supervised, the reproduction, copying, and/or manufacturing of the Thousand Oaks' Barrel Copyrights by offering for sale, advertising, displaying, promoting, retailing, selling, and/or distributing products emblemized with graphics which are, at a minimum, substantially similar, or derivatives of, and infringe one or more of the Thousand Oaks' Barrel Copyrights.

294. Deep South Barrels has willfully and intentionally infringed Thousand Oaks' Barrel Copyrights by causing the unauthorized reproduction of protected Thousand Oaks graphics onto Deep South Barrels products.

295. As a direct result of Deep South Barrels' conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to Thousand Oaks' ownership rights in the Thousand Oaks' Barrel Copyrights.

296. Without permission, Deep South Barrels intentionally and knowingly directed, participated in, and/or supervised, the reproduction, copying, and/or manufacturing of the Thousand Oaks' Copyrighted works by offering for sale, advertising, displaying, promoting, retailing, selling, and/or distributing product inserts or packaging illustrated with graphics and text which are, at a minimum, substantially similar, or derivatives of, and infringe one or more of the Thousand Oaks' Label Copyrights.

297. Deep South Barrels has willfully and intentionally infringed Thousand Oaks' Label Copyrights by causing the use of protected Thousand Oaks graphics in association with Deep South Barrels products.

298. As a direct result of Deep South Barrels' conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights in the Thousand Oaks' Label Copyrights.

299. Without permission, Deep South Barrels intentionally and knowingly directed, participated in, and/or supervised, the reproduction, copying, displaying, and/or published Thousand Oaks' protected content from the <www.1000oaksbarrel.com> Website, protected by the Website Copyrights, and used that copied content on the competing website <www.deepsouthbarrels.com> to promote Deep South Barrels products to potential and existing customers.

300. Deep South Barrels has willfully and intentionally infringed Thousand Oaks' Website Copyrights by causing the unauthorized reproduction of parts of Thousand Oaks' work from the <www.1000oaksbarrel.com> Website to the infringing website <www.deepsouthbarrels.com>. The copied content is identical, or substantially similar, to, or a derivative of, the Thousand Oaks' Website Copyrights and was copied without consent.

301. As a direct result of Deep South Barrels' conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights in the Thousand Oaks' Website Copyrights.

302. Deep South Barrels' acts, as alleged herein, constitute infringement of Thousand Oaks' Copyright Works, including Thousand Oaks' exclusive rights to reproduce, distribute and/or sell such protected material.

303. Deep South Barrels' knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks. Thousand Oaks is therefore

entitled to injunctive relief, statutory damages and/or Deep South Barrels' profits, gains, advantages, and increased damages.

304. Unless enjoined, Deep South Barrels will continue to derive income and profits from the continued use of Thousand Oaks' Copyright Works.

305. Thousand Oaks further seeks an injunction restraining the operation and public access of the infringing website <www.deepsouthbarrels.com> to prevent current and future acts of copyright infringement.

306. In infringing Thousand Oaks' works, Deep South Barrels knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover enhanced damages.

## COUNT 2: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
### [17 U.S.C. §501 et seq.]
### (Against Jonathan Emmons, Elissa Emmons, Randall Bentley)

307. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

308. Defendants Jonathan Emmons, Elissa Emmons and Randall Bentley (hereinafter "Deep South Owners") are co-owners and/or members of, and have direct financial interests in, Deep South Barrels LLC.

309. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley have notice of Thousand Oaks' original works of authorship and copyright rights embodied by the Copyrighted Works.

310. Upon information and belief, the Deep South Owners had actual knowledge of the unlawful activity complained of herein and induced, caused, and materially contributed to that activity, or ratified and adopted acts, including but not limited to, copyright infringement,

making the Deep South Owners liable both directly individual and as joint tortfeasors for the acts of Deep South Barrels.

311. Without permission, the Deep South Owners intentionally and knowingly directed, participated in, and/or supervised, the reproduction, copying, and/or manufacturing of the Thousand Oaks' Copyrighted Works by offering for sale, advertising, displaying, promoting, retailing, selling, and/or distributing products and the Deep South Website, that at a minimum, are substantially similar, or derivatives of, and infringe one or more of the Thousand Oaks' Copyright Works.

312. The Deep South Owners' actions in inducing Deep South Barrels to infringe the Thousand Oaks' Copyright Works were undertaken willfully and intentionally.

313. As a direct result of Deep South's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to Thousand Oaks' to Thousand Oaks products incorporating the Copyright Works and ownership rights in the Thousand Oaks' Copyright Works.

## COUNT 3: FEDERAL TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a)(1)(A); Sec. 43(a) of the Lanham Act]
### (Against Deep South Barrels)

314. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

315. Thousand Oaks owns the rights to common law marks BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES and has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

72

316.     Thousand Oaks has continuously used its trademarks BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES (The "MARKS") in commerce since their first dates of use.

317.     Thousand Oaks has continuously used its trademarks BOOTLEG KIT, CIGAR INFUSION BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES in Texas since before the formation of Deep South Barrels and has continuously used the mark WEDDING BARREL in Virginia and Texas since 2011.

318.     The MARKS are distinctive or at least have acquired secondary meaning.

319.     Deep South Barrels is and at the time of its actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the MARKS.

320.     Deep South Barrels' intentionally and knowingly used in commerce the MARKS in connection with the sale, offering for sale, distribution, or advertising of Deep South Barrels' goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' MARKS or confusingly similar marks knowing it would create a likelihood of confusion among consumers and others.

321.     Deep South Barrels directly and intentionally reproduced, copied, and colorably imitated Thousand Oaks' MARKS and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, website pages, products, and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods.  Deep South Barrels thereupon offered, advertised, promoted, retailed, sold, and distributed the MARKS and identical or related products bearing Thousand Oaks' MARKS.

322. Deep South Barrels' unauthorized use of the Thousand Oaks MARKS infringes on Thousand Oaks' common law rights in its MARKS and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Deep South Barrels' products to deceive the public by passing off Deep South Barrels' products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

323. Deep South Barrels did not and failed to obtain the consent or authorization of Thousand Oaks as the owner of the MARKS to deal in and commercially distribute, market and sell products bearing the MARKS into the stream of commerce.

324. Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of Deep South Barrels, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of Deep South Barrels' "BOOTLEG" brands, in any variation to market or promote Deep South Barrels' products into the stream of commerce.

325. Thousand Oaks' use of the TOP SHELF TASTE AT BOTTOM BARREL PRICES Mark in 2006 was well before the formation of Deep South Barrels, and well before the first use of the terms by Deep South Barrels, in any variation, to market or promote Deep South Barrels' products into the stream of commerce.

326. Thousand Oaks' use of the CIGAR INFUSION BARREL Mark in 2007 was well before the formation of Deep South Barrels, and well before the first use of the terms CIGAR INFUSION BARREL market or promote Deep South Barrels' products into the stream of commerce.

327.     Thousand Oaks' use of the WEDDING BARREL Mark in 2011 was well before the first use of the term WEDDING BARREL to market or promote Deep South Barrels' products into the stream of commerce.

328.     Deep South Barrels' egregious and intentional use and sale of items bearing the Thousand Oaks MARKS are likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud customers who believe that Deep South Barrels' items are authentic products manufactured by Thousand Oaks.

329.     Deep South Barrels' acts has been committed with knowledge of Thousand Oaks' exclusive rights and goodwill in the MARKS, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

330.     Deep South Barrels' acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks MARKS.  Deep South Barrels' acts have damaged Thousand Oaks' business reputation and have impaired, blurred, and tarnished Thousand Oaks' goodwill in Thousand Oaks' MARKS.

331.     Thousand Oaks has suffered damages and Deep South Barrels has obtained profits and/or unjust enrichment as a result of Deep South Barrels' wrongful conduct.

332.     Thousand Oaks has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the MARKS and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

333.     Deep South Barrels' continued and knowing use of Thousand Oaks' MARKS without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' MARKS in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.  Based on

such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by §§ 1116, 1117, and 1118, including Deep South's profits, treble damages, prejudgment interest, and attorney's fees.

334. The balance of hardships favors Thousand Oaks.

335. Preventing use by Deep South Owners of the Thousand Oaks MARKS is in the public interest.

## COUNT 4: CONTRIBUTORY AND VICARIOUS TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a)(1)(A); Sec. 43(a) of the Lanham Act]
### (Against Jonathan Emmons, Elissa Emmons, and Randall Bentley)

336. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

337. Defendants Deep South Owners are and at the time of its actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the Thousand Oaks BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES MARKS.

338. It was foreseeable that Deep South would infringe on Thousand Oaks' exclusive right to use the MARKS. Upon information and belief, the Deep South Owners had actual knowledge of the unlawful activity complained of herein and induced, caused, and materially contributed to that activity, or ratified and adopted acts, including but not limited to, trademark infringement, making the Deep South Owners liable both directly individual and as joint tortfeasors for the acts of Deep South Barrels.

339. On information and belief, the Deep South Owners intentionally and knowingly used in commerce the MARKS in connection with the sale, offering for sale, distribution, or advertising of Deep South Barrels' goods by offering, advertising, promoting, retailing, selling,

and distributing related products bearing Thousand Oaks' MARKS or confusingly similar marks knowing it would create a likelihood of confusion among consumers and others.

340. On information and belief, the Deep South Owners contributed to Deep South's direct and intentional reproduction, copying, and colorable imitation of Thousand Oaks' MARKS and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, website pages, products, and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Deep South Owners thereupon contributed offering, advertising, promoting, retailing, selling, and distributing the MARKS and identical or related products bearing Thousand Oaks' MARKS.

341. On information and belief, the Deep South Owners have directly engaged in, and intentionally induced Deep South Barrels, to use, and continue to use, the MARKS in commerce with full knowledge that the Deep South Owners and Deep South Barrels did not and failed to obtain the consent or authorization of Thousand Oaks as the owner of the MARKS to deal in and commercially distribute, use, market and sell products bearing the MARKS into the stream of commerce.

342. Thousand Oaks has suffered damages, and the Deep South Owners have obtained profits and/or unjust enrichment as a result of Deep South Barrels' and the Deep South Owners' wrongful conduct.

343. Thousand Oaks has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the MARKS and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

344. The Deep South Owners' continued and knowing contributory trademark infringement of Thousand Oaks' MARKS constitutes intentional infringement of Thousand Oaks' MARKS by Deep South Barrels in violation of §32 of the Lanham Act, 15 U.S.C. § 1114. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by §§ 1116, 1117, and 1118, including the Deep South Owners' profits, for treble damages, prejudgment interest, and attorney's fees.

345. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley are individually, as well as jointly and severally, liable, along with Deep South Barrels, for all such damages.

346. The balance of hardships favors Thousand Oaks.

347. Preventing contributory use by Deep South Owners of the Thousand Oaks MARKS is in the public interest.

### COUNT 5: COMMON LAW TRADEMARK INFRINGEMENT
### (Against Deep South Barrels)

348. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

349. Deep South Barrels'' unauthorized use of BOOTLEG KIT, CIGAR INFUSION BARREL, WEDDING BARREL, and TOP SHELF TASTE AT BOTTOM BARREL PRICES in the United States, Texas, and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq*., because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of Deep South Barrels' goods.

350. Deep South Barrels' acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' MARKS.

351.     Thousand Oaks has suffered damages and Deep South Barrels has obtained profits and/or unjust enrichment as a result of Deep South Barrels' wrongful conduct.

352.     Deep South Barrels' continued and knowing use of Thousand Oaks' MARKS without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' MARKS. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, including Deep South Barrels' profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

353.     Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley are individually, as well as jointly and severally, liable for inducing Deep South Barrels' trademark infringement.

### COUNT 6: UNFAIR COMPETITION: TRADEMARK INFRINGEMENT, PASSING OFF, AND FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW
#### (Against Deep South Barrels)

354.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

355.     Thousand Oaks first used Thousand Oaks' MARKS before Deep South first used the terms BOOTLEG KIT, CIGAR INFUSION BARREL, and WEDDING BARREL as Deep South's trademarks, or in any confusingly similar variation, to market or promote Deep South's products.

356.     Deep South's use of Thousand Oaks' MARKS infringes on Thousand Oaks' common law rights in its MARKS and has and will continue to have the effect of causing confusion, initial interest confusion, reverse confusion, mistake, or deception as to the source and origin of Deep South's products to deceive the public by passing off Deep South's products as being manufactured, sponsored, or otherwise approved by or connected with Thousand Oaks.

357. Deep South's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, and tarnished Thousand Oaks' goodwill in Thousand Oaks' MARKS.

358. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley are individually, as well as jointly and severally, liable, along with Deep South Barrels LLC, for all such damages.

<strong>COUNT 7: TRADE SECRETS MISAPPROPRIATION</strong><br>[VA Code § 59.1-336 - § 59.1-338]<br>(Against Deep South Barrels)

359. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

360. Thousand Oaks owns a database of supplier information, customer information, and other confidential business information.

361. Thousand Oaks undertakes reasonable precautions to maintain its client and business information as confidential and grants access only to those authorized employees who are under an obligation of confidentiality. Thousand Oaks' confidential supplier list and customer list and other business information are of substantial economic value to Thousand Oaks.

362. Without authorization from Thousand Oaks, and with full knowledge that Thousand Oaks expressly did not authorize use of the confidential information, Deep South co-owner Bentley misappropriated and improperly acquired Thousand Oaks' supplier list and other business information for use in gaining an unfair advantage over Thousand Oaks.

363. Deep South used the confidential information, which was acquired from Bentley with full knowledge he was misappropriating confidential information from Thousand Oaks to give Deep South a commercial advantage, which constitutes willful misappropriation of Thousand Oaks' trade secrets.

364. The confidential information misappropriated by Defendants has substantial value and the information contained therein has been utilized by Deep South to harm Thousand Oaks.

365. Deep South's acquisition, use and disclosure of Thousand Oaks' confidential information are substantial factors in causing harm to Thousand Oaks.

366. As a result of Deep South's misappropriation of its trade secrets, Thousand Oaks has suffered and continues to suffer irreparable injury, for which there is no adequate remedy at law.

367. Unless enjoined by the Court, Deep South will continue its misappropriation of Thousand Oaks trade secrets by utilizing the information contained therein to compete unfairly with Thousand Oaks, and Thousand Oaks will continue to suffer irreparable harm.

368. Thousand Oaks has suffered economic losses to be established at trial and is entitled to recover damages for the actual loss caused by Deep South's misappropriation. Thousand Oaks is additionally entitled to recover for the unjust enrichment bestowed on Deep South as a result of its acts of misappropriation.

369. Deep South's misappropriation of Thousand Oak's trade secrets was carried out in a willful, wanton and reckless manner in disregard of the rights of Thousand Oaks, therefore entitling Thousand Oaks to an award of punitive damages.

370. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley are individually, as well as jointly and severally, liable, along with Deep South Barrels LLC, for all such damages.

## COUNT 8: COMMON LAW MISAPPROPRIATION
### (Against Deep South Barrels)

371.    Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

372.    Thousand Oaks created the first Bootleg Kit product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

373.    Deep South has used the Thousand Oaks Bootleg Kit design, to manufacture, advertise, market, offer for sale, and sell a competing barrel aging and flavoring product kit, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

374.    Thousand Oaks created the first Cigar Infusion Barrel product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels.

375.    Deep South has used the Thousand Oaks Cigar Infusion Barrel design to manufacture, advertise, market, offer for sale, and sell a similar barrel, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

376. Thousand Oaks created the first Wedding Barrel product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Wedding Barrels.

377. Deep South has used the Thousand Oaks Wedding Barrel design to manufacture, advertise, market, offer for sale, and sell a similar barrel, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Wedding Barrel.

378. Thousand Oaks created the first Barrel Mug product through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

379. Deep South has used the Thousand Oaks Barrel Mug design to manufacture, advertise, market, offer for sale, and sell a similar mug, in which Deep South had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Deep South has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

380. Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley are individually, as well as jointly and severally, liable, along with Deep South Barrels LLC, for all such damages.

## PRAYER FOR RELIEF AGAINST DEEP SOUTH BARRELS

Wherefore, as a result of the unlawful acts of the Deep South Barrels, and Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against Deep South:

1. That Deep South has infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2. That Deep South and its subsidiaries, officers, agents, servants, directors, owners, members, employees, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

3. That Thousand Oaks is the exclusive owner of the Thousand Oaks copyrights and that such copyright registrations are valid.

4. For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(1)&(b).

5. For an accounting of all profits, income, receipts or other benefit derived by Deep South from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiffs copyrights pursuant to 17 U.S.C. §§504(a)(I)&(b).

6. For a disgorgement by Deep South to Thousand Oaks for all profits derived by the Deep South Defendants from their acts of copyright infringement and to reimburse Thousand Oaks for all damage suffered by Thousand Oaks by reason of Deep South's, pursuant to 17 US.C. §§504(a)(I)&(b).

7. For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8. For costs and interest pursuant to 17 U.S.C. §505.

9. For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10. For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by Deep South as a result of their unlawful business acts or practices.

11. For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining Deep South directly or indirectly from using Thousand Oaks' Copyright Works.

12. For an order directing Deep South and/or the internet provider of Deep South to take down the website where the infringing activity is conducted and transacted by Deep South, namely http://www.deepsouthbarrels.com, until infringing content and products for sale are removed from the website, and remove infringing images and text from Deep South social media pages.

13. For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining Deep South directly or indirectly:

a. From using any of Thousand Oaks' supplier and/or other information in violation of Thousand Oaks' trade secrets;

b. From ever disclosing or using any of Thousand Oaks' confidential proprietary or trade secret information or property;

14. For an award of damages for trade secret misappropriation to be determined at time trial.

15. Preliminarily and permanently enjoining Deep South, its agents, servants, employees, members, owners, officers and all persons in active concern and participation with them:

85

a. From using the Thousand Oaks Marks or any marks similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of Deep South products, including using the Thousand Oaks' Marks in any websites dedicated to the same (including www.deepsouthbarrels.com );

b. From using any logo, trade name, or trademark that may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Deep South are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

c. From infringing Plaintiff Thousand Oaks' trademarks; and

16. Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the Bootleg Kit products.

17. Pursuant to 15 U.S.C. § 1116(a), ordering Deep South to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Deep South has complied with the injunction.

18. Finding that, by the acts complained of above, Deep South has infringed Thousand Oaks' trademarks in violation of 15 U.S.C. § 1114 and common law.

19. Finding that, by the acts complained of above, Deep South has created a false designation of origin and false representation of association and has infringed the Thousand Oaks Marks and in violation of 15 U.S.C. § 1125(a).

20.     Finding that, by the acts complained of above, the Deep South has created a false designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

21.     Finding that the acts complained of above constitute willful infringement of the Thousand Oaks Marks.

22.     Ordering the Deep South Defendants to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, including all profits derived therefrom.

a. Ordering the Deep South Defendants to pay Thousand Oaks:

i. The Deep South Defendants' profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b.     Treble actual damages in connection with the Deep South Defendants' infringement of the Thousand Oaks Marks;

c.     Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

23.     From using the Thousand Oaks Barrel Products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug Products and in any websites dedicated to the same (including <www.deepsouthbarrels.com> );

24.     Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Barrel Products, including the Bootleg Kit, the Cigar Infusion Barrel, the Wedding Barrel, and the Barrel Mug.

25. Finding that, by the acts complained of above, Deep South has misappropriated Thousand Oaks' Barrel Products in violation of common law misappropriation.

26. Ordering Deep South to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, Wedding Barrel, and Barrel Mug products including all profits derived therefrom.

a. Ordering Deep South to pay Thousand Oaks:

i. The Deep South Defendants' profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with the Deep South Defendants' misappropriation of misappropriated goods.

27. Awarding Thousand Oaks pre-judgment and post-judgment interest against Deep South.

28. That judgment be entered against Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, jointly and severally, for the full amount of Thousand Oaks' damages arising from copyright infringement, trademark infringement, unfair competition, and misappropriation.

29. That Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley be ordered to account for and disgorge to Thousand Oaks all profits they and their company have derived from their copyright infringement, trademark infringement, unfair competition, and misappropriation, and that judgment be entered in Thousand Oaks' favor against them, jointly and severally, in that amount.

30. That judgment be entered in favor of Thousand Oaks and against Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, jointly and severally, for the full amount of Thousand Oaks' damages and Defendants Emmons, Emmons, and Bentley's profits

arising from their direct and contributory copyright infringements of the Thousand Oaks Copyright Works.

31.     That judgment be entered in favor of Thousand Oaks and against Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, jointly and severally, for the full amount of Thousand Oaks' damages and Defendants Emmons, Emmons, and Bentley's profits arising from their direct and contributory trademark infringements of the Thousand Oaks Trademarks.

32.     That such damages as Thousand Oaks is entitled to based on Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley's willful acts of copyright infringement, trademark infringement, false designation of origin, unfair competition, and passing off be trebled, or in the alternative, Thousand Oaks have an recover enhanced damages.

33.     That the costs of this action, including Thousand Oaks' reasonable attorneys' fees, be taxed against Defendants Jonathan Emmons, Elissa Emmons, and Randall Bentley, jointly and severally.

34.     Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

## CAUSES OF ACTION AGAINST WOOD HARBOUR

### COUNT 9: FEDERAL COPYRIGHT INFRINGEMENT
**[17 U.S.C. §501 et seq.]**
**(Against Wood Harbour)**

381.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

382.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

383. Thousand Oaks owns deposited copyright assigned case Serial No. 1-3893853441 for a Bootleg Kit label, Serial No. 1-3899999741 for the 2010 Bootleg Kit label, and Serial No. 1-3893853507 for the 2011 Bootleg Kit Card (Label Copyrights),

384. Defendant Wood Harbour had access to the Label Copyrights because, *inter alia*, the Label Copyrights have been and/or are available on the Thousand Oaks Website <www.1000oaksbarrel.com> and are publicly accessible by the Internet. Any member of the public may purchase products embodying certain of the Label Copyrights from Thousand Oaks retail booths or the <www.1000oaksbarrel.com> website. Moreover, Wood Harbour and Defendant Mark Carboni have been retail contractors and resellers of Thousand Oaks products and by virtue of their status would have been familiar with the Thousand Oaks products, intellectual property, Website content, and labels and packaging for Thousand Oaks products and have in their possession labels and packaging embodying the Label Copyrights.

385. Wood Harbour has notice of Thousand Oaks' original works of authorship and copyright rights embodied by the Label Copyrights.

386. Without permission, Wood Harbour intentionally and knowingly directed, participated in, and/or supervised, the use of the Thousand Oaks' Label Copyrights by offering for sale, advertising, using displaying, promoting, retailing, selling, and/or distributing product inserts or packaging illustrated with graphics and text which are, at a minimum, substantially similar, or derivatives of, and infringe one or more of the Thousand Oaks' Label Copyrights.

387. Wood Harbour has willfully and intentionally infringed the Label Copyrights by displaying, advertising, using and selling Thousand Oaks' products and packaging without permission.

388. As a direct result of Wood Harbour's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Label Copyrights.

389. Wood Harbour's knowing and intentional copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks. Thousand Oaks is therefore entitled to injunctive relief, statutory damages and/or Wood Harbour's profits, gains, advantages, and increased damages.

390. Unless enjoined, Wood Harbour will continue to derive income and profits from the continued use of Thousand Oaks' Label Copyrights.

391. In infringing Thousand Oaks' Label Copyrights, Wood Harbour knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover enhanced damages.

## COUNT 10: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
### [17 U.S.C. §501 et seq.]
### (Against Mark Carboni)

392. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

393. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

394. Defendant Mark Carboni had access to the Thousand Oaks Label Copyrights because, *inter alia*, the Label Copyrights have been and/or are available on the Thousand Oaks Website <www.1000oaksbarrel.com> and are publicly accessible by the Internet. Any member of the public may purchase products embodying certain of the Label Copyrights from Thousand

Oaks retail booths or the <www.1000oaksbarrel.com> website. Moreover, Defendant Mark Carboni through Wood Harbour has been a retail contractor and reseller of Thousand Oaks products, was trained by Thousand Oaks personnel, and by virtue of his status and training would have been familiar with the Thousand Oaks Website content, and packaging and labels for products and have in his possession labels embodying the Label Copyrights.

395. Defendant Mark Carboni has notice of Thousand Oaks' original works of authorship and copyright rights embodied by the Label Copyrights.

396. Without permission, Mark Carboni intentionally and knowingly directed, participated in, and/or supervised, the use of the Thousand Oaks' Label Copyrights by offering for sale, advertising, displaying, promoting, retailing, selling, and/or distributing product inserts or packaging illustrated with graphics and text at Wood Harbour stores which are, at a minimum, substantially similar, or derivatives of, and infringe one or more of the Thousand Oaks' Label Copyrights.

397. Defendant Mark Carboni has willfully and intentionally contributorily infringed Thousand Oaks' Label Copyrights by Wood Harbour displaying, advertising, using and selling Thousand Oaks' products and packaging without permission.

398. As a direct result of Carboni's conduct, Thousand Oaks has suffered and continues to suffer irreparable harm to its ownership rights and the copyrights in Thousand Oaks' Label Copyrights.

399. Defendant Mark Carboni's knowing and intentional contributory copyright infringement as alleged herein has caused and will continue to cause substantial and irreparable harm to Thousand Oaks, and has and will continue to cause damage to Thousand Oaks.

Thousand Oaks is therefore entitled to injunctive relief, statutory damages and/or Mark Carboni's profits, gains, advantages, and increased damages.

400.　　Unless enjoined, Mark Carboni will continue to derive income and profits from the continued use of Thousand Oaks' Label Copyrights.

401.　　In infringing Thousand Oaks' Label Copyrights, Mark Carboni knowingly and intentionally acted willfully and with reckless disregard for Thousand Oaks' legal rights. Thousand Oaks is therefore entitled to recover enhanced damages.

402.　　Defendant Mark Carboni is individually, as well as jointly and severally, liable along with Wood Harbour, for all such damages.

### COUNT 11: FEDERAL TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]
### (Against Wood Harbour)

403.　　Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

404.　　Thousand Oaks has continuously used its trademark BOOTLEG KIT in interstate commerce since at least as early as 2006.

405.　　Thousand Oaks owns the rights to common law marks BOOTLEG KIT and has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

406.　　Wood Harbour is and at the time of their actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the mark BOOTLEG KIT.

407.　　Wood Harbour did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the BOOTLEG KIT mark to deal in and commercially

distribute, market and sell products and related products bearing BOOTLEG KIT mark into the stream of commerce.

408.    Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of Wood Harbour, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of Wood Harbour's "BOOTLEG" brands, in any variation to market or promote Wood Harbour's products into the stream of commerce.

409.    Wood Harbour's intentionally and knowingly used in commerce the reproductions, copies, and/ or colorable imitations of Thousand Oak's BOOTLEG KIT mark in connection with the sale, offering for sale, distribution, or advertising of Wood Harbour's goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' mark.

410.    Wood Harbour directly and intentionally reproduced, copied, and colorably imitated Thousand Oaks' Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods. Wood Harbour thereupon offered, advertised, promoted, retailed, sold, and distributed marks and related products bearing Thousand Oaks' BOOTLEG KIT mark.

411.    Wood Harbour's direct and intentional use and sale of items bearing Thousand Oaks' BOOTLEG KIT mark is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Wood Harbour's items are authentic products manufactured by Thousand Oaks.

412.     Wood Harbour's acts have been committed with knowledge of Thousand Oaks'' exclusive rights and goodwill in the BOOTLEG KIT mark, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

413.     Wood Harbour's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

414.     Wood Harbour's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, and tarnished Thousand Oaks' goodwill in Thousand Oaks' mark.

415.     Thousand Oaks has suffered damages and Wood Harbour has obtained profits and/or unjust enrichment as a result of Wood Harbour's wrongful conduct.

416.     Thousand Oaks' has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the BOOTLEG KIT mark and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

417.     Wood Harbour's continued and knowing use of Thousand Oaks' BOOTLEG KIT mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark in violation of §32 of the Lanham Act, 15 U.S.C § 1114. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including Wood Harbour's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

## COUNT 12:  CONTRIBUTORY AND VICARIOUS TRADEMARK INFRINGEMENT
### [15 U.S.C. § 1125(a), Sec. 43(a) of the Lanham Act]
### (Against Mark Carboni)

418.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

95

419.     Defendant Mark Carboni is and at the time of the actions complained of herein was actually aware that Thousand Oaks is the creator, user, and owner of the mark BOOTLEG KIT.

420.     Defendant Mark Carboni did not and failed to obtain the consent or authorization of Thousand Oaks as the registered owner of the BOOTLEG KIT mark to deal in and commercially distribute, market and sell products and related products bearing BOOTLEG KIT mark into the stream of commerce.

421.     Thousand Oaks' use of the BOOTLEG KIT Mark in 2006 was well before the formation of Wood Harbour, and well before the first use of the terms BOOTLEG BOX, BOOTLEG BARREL, BOOTLEG KIT, or any of Wood Harbour's "BOOTLEG" brands, in any variation to market or promote Wood Harbour's products into the stream of commerce.

422.     Defendant Mark Carboni intentionally and knowingly contributed to Wood Harbour's use in commerce of the reproductions, copies, and/ or colorable imitations of Thousand Oak's BOOTLEG KIT mark in connection with the sale, offering for sale, distribution, or advertising of Wood Harbour's goods by offering, advertising, promoting, retailing, selling, and distributing related products bearing Thousand Oaks' mark.

423.     Defendant Mark Carboni contributed to direct and intentional reproduction, copying, and colorably imitation of Thousand Oaks' BOOTLEG KIT mark and applied such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles and/or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, and/or advertising of goods.  Carboni thereupon contributed to offering, advertising, promoting, retailing, selling, and distributing marks and related products bearing Thousand Oaks' BOOTLEG KIT mark.

424.     Defendant Mark Carboni's direct and intentional contribution of the use and sale of items bearing Thousand Oaks' BOOTLEG KIT mark by Wood Harbour is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Wood Harbour's items are authentic products manufactured by Thousand Oaks.

425.     Defendant Mark Carboni's acts have been committed with knowledge of Thousand Oaks" exclusive rights and goodwill in the BOOTLEG KIT mark, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive

426.     Defendant Mark Carboni's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

427.     Defendant Mark Carboni's acts have damaged Thousand Oaks' business reputation and have impaired, blurred, and tarnished Thousand Oaks' goodwill in Thousand Oaks' BOOTLEG KIT mark.

428.     Thousand Oaks has suffered damages and Defendant Mark Carboni has obtained profits and/or unjust enrichment as a result of Carboni's wrongful conduct.

429.     Thousand Oaks' has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the BOOTLEG KIT mark and the goodwill associated therewith, for which it has no adequate remedy at law; thus Thousand Oaks' requests injunctive relief.

430.     Defendant Mark Carboni's continued and knowing use of Thousand Oaks' BOOTLEG KIT mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark in violation of §32 of the Lanham Act, 15 U.S.C § 1114.  Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, and other remedies provided by § 1116, 1117, and 1118, including

Carboni's and his company's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

431. Defendant Mark Carboni is individually, as well as jointly and severally, liable, along with Wood Harbour, for all such damages.

## COUNT 13: TRADEMARK INFRINGEMENT UNDER COMMON LAW
### (Against Wood Harbour)

432. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

433. Wood Harbour's unauthorized use of BOOTLEG KIT in the United States and Virginia constitutes trademark infringement in violation of Virginia common law and statutory law, including VA Code §§ 59.1-196 *et seq.*, because it is likely to cause confusion, mistake, or deception as to source, origin, affiliation, connection, or association of Wood Harbour's goods.

434. Wood Harbour's acts have caused Thousand Oaks to lose control over the reputation and goodwill associated with Thousand Oaks' BOOTLEG KIT mark.

435. Thousand Oaks has suffered damages and Wood Harbour has obtained profits and/or unjust enrichment as a result of Wood Harbour's wrongful conduct.

436. Wood Harbour's continued and knowing use of Thousand Oaks' Mark without Thousand Oaks' consent or authorization constitutes intentional infringement of Thousand Oaks' BOOTLEG KIT mark. Based on such conduct, Thousand Oaks is entitled to injunctive relief as well as monetary damages, including Wood Harbour's profits, treble damages, reasonable attorneys' fees, costs and prejudgment interest.

437. Defendant Mark Carboni is individually, as well as jointly and severally, liable, along with Wood Harbour, for all such damages.

## COUNT 14: UNFAIR COMPETITION, COMMON LAW MISAPPROPRIATION
### (Against Wood Harbour)

438.     Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

439.     Thousand Oaks owns the distinctive and proprietary Bootleg Kit product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Bootleg Kits exclusively at its Virginia facility.

440.     Wood Harbour has used the Bootleg Kit, to advertise, market, offer for sale, and sell a similar barrel aging and flavoring product, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Bootleg Kit.

441.     Thousand Oaks owns the distinctive and proprietary Cigar Infusion Barrel product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Cigar Infusion Barrels exclusively at its Virginia facility.

442.     Wood Harbour has used the Cigar Infusion Barrel to advertise, market, offer for sale, and sell a similar barrel, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Cigar Infusion Barrel.

443.     Thousand Oaks owns the distinctive and proprietary Barrel Mug product created through the expenditure of significant time, labor, skill and money, which is used in the design and manufacture of its Barrel Mugs exclusively at its Virginia facility.

444. Wood Harbour has used the Barrel Mug design to advertise, market, offer for sale, and sell a similar mug, in which Wood Harbour had no rights nor independent creation, to gain a special advantage over Thousand Oaks in the market because Wood Harbour has not been burdened with any of the time, labor, and expense incurred by Thousand Oaks in the extensive and costly design and manufacture of the Barrel Mug.

445. Defendant Mark Carboni is individually, as well as jointly and severally, liable, along with Wood Harbour, for all such damages.

## COUNT 15: BREACH OF CONTRACT
### (Against Wood Harbour)

446. Thousand Oaks repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

447. Defendant Wood Harbour entered into a contract with the Plaintiff.

448. Thousand Oaks performed its obligations under the contract by manufacturing products ordered by Wood Harbour, shipping the products to Wood Harbour's facility, and licensing the use of Thousand Oaks' intellectual property and labels to Wood Harbour to sell the Thousand Oaks products.

449. By failing to remove all Thousand Oaks products, packaging, trademarks, and labels from the Wood Harbour/Deep South Barrels shop prior to advertising, promoting, offering, and selling Deep South Bootleg Kits and other Deep South products, Wood Harbour intermingled Thousand Oaks' property with Deep South products and property, Wood Harbour breached its contract with Thousand Oaks.

450. As a result of Wood Harbour's breach of its contract, Thousand Oaks has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF AGAINST WOOD HARBOUR

Wherefore, as a result of the unlawful acts of Wood Harbour and Mark Carboni set forth in each of the counts above, Thousand Oaks prays that the Court enter a judgment against Wood Harbour and Mark Carboni:

1.     That Wood Harbour has infringed the Thousand Oaks copyrights under 17 U.S.C. §501, *et seq.*

2.     That Wood Harbour and its subsidiaries, officers, agents, servants, directors, owners, employees, members, servants, partners, representative, assigns, successors, related companies, affiliated companies and all persons in active concert or participation with Thousand Oaks or with any of the foregoing be joined preliminarily during the pendency of this action and permanently thereafter from copying, displaying, featuring, or using Thousand Oaks' copyrights, or any work that is substantially similar thereto.

3.     That Thousand Oaks is the exclusive owner of the Thousand Oaks Label Copyrights and that such copyright registrations are valid.

4.     For actual damages for copyright infringement pursuant to 17 U.S.C. §§504(a)(l)&(b).

5.     For an accounting of all profits, income, receipts or other benefit derived by Wood Harbour from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Thousand Oaks' copyrights pursuant to 17 U.S.C. §§504(a)(l)&(b).

6.     For a disgorgement by Wood Harbour to Thousand Oaks for all profits derived by Wood Harbour from its acts of copyright infringement and to reimburse Thousand Oaks for

all damage suffered by Thousand Oaks by reason of Wood Harbour's acts, pursuant to 17 US.C. §§504(a)(I)&(b).

7.    For statutory damages, where appropriate, for each and every act of copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§504(a)(2)&(c).

8.    For costs and interest pursuant to 17 U.S.C. §505.

9.    For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §505.

10.    For full restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which may have been obtained by Wood Harbour as a result of their unlawful business acts or practices.

11.    For Temporary Restraining Order (TRO) and Preliminary and Permanent Injunction restraining and enjoining Wood Harbour directly or indirectly from using Thousand Oaks' copyrights.

12.    For an award of actual damages for copyright infringement to be proven at time of trial.

13.    For an award of enhanced damages to be determined at time trial.

14.    Preliminarily and permanently enjoining Wood Harbour, its agents, servants, employees, officers, owners, and all persons in active concern and participation with them:

a.    From using the Thousand Oaks BOOTLEG KIT mark or any marks similar thereto, or any other Thousand Oaks mark in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of Wood Harbour or Deep South products.

b. From using any logo, trade name, or trademark that may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Wood Harbour are sponsored by, authorized by or in any way associated with the Plaintiff Thousand Oaks or the Thousand Oaks brands;

c. From infringing Plaintiff Thousand Oaks' trademarks; and

d. From falsely representing themselves as being connected with, sponsored by or associated with Plaintiff Thousand Oaks or the Thousand Oaks brands.

15. Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Marks, including the BOOTLEG KIT mark or any other Thousand Oaks marks.

16. Pursuant to 15 U.S.C. § 1116(a), ordering Wood Harbour to file with the Court and serve upon Thousand Oaks' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Wood Harbour has complied with the injunction.

17. Finding that, by the acts complained of above, Wood Harbour has infringed Thousand Oaks' trademark in violation of 15 U.S.C. § 1114.

18. Finding that, by the acts complained of above, Wood Harbour has created a false designation of origin and false representation of association and has infringed the Thousand Oaks BOOTLEG KIT mark in violation of 15 U.S.C. § 1125(a).

19. Finding that, by the acts complained of above, Wood Harbour has created a false designation of origin and false representation of association in violation of 15 U.S.C.§ 1125(d).

20. Finding that the acts complained of above constitute willful infringement of the Thousand Oaks BOOTLEG KIT mark.

21. Ordering Wood Harbour to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit products, including all profits derived therefrom.

a. Ordering Wood Harbour to pay Thousand Oaks:

i. Wood Harbour's profits for sale of the infringing goods *(i.e.,* the Bootleg Kit) using the Thousand Oaks Marks;

b. Treble actual damages in connection with Wood Harbour's infringement of the Thousand Oaks mark;

c. Thousand Oaks' costs and reasonable attorneys' fees incurred in this matter.

22. Preliminarily and permanently enjoining Wood Harbour, its agents, servants, employees, officers and all persons in active concern and participation with them from using the Thousand Oaks Bootleg Kit, Cigar Infusion Barrel, and Barrel Mug products or any products similar thereto in connection with the manufacture, distribution, advertising for sale, promotion or sale of any unauthorized goods or services, including the manufacture, distribution, advertisement, promotion, holding for sale or selling of the Barrel Products.

23. Ordering the destruction of all unauthorized goods, bearing any copy or colorable imitation of the Thousand Oaks Bootleg Kit, Cigar Infusion Barrel, and Barrel Mug products.

24. Finding that, by the acts complained of above, Wood Harbour has misappropriated Thousand Oaks' Bootleg Kit, Cigar Infusion Barrel, and Barrel Mug products in violation of common law misappropriation.

25. Ordering Wood Harbour to provide Thousand Oaks with a full accounting of all manufacture, distribution and sale of the Bootleg Kit, Cigar Infusion Barrel, and Barrel Mug products including all profits derived therefrom.

a. Ordering Wood Harbour to pay Thousand Oaks:

i. Wood Harbour's profits for sale of the misappropriated goods;

ii. Treble actual damages in connection with Wood Harbour's misappropriation of the Bootleg Kit, Cigar Infusion Barrel, and Barrel Mug products.

26. Enter a judgment against Wood Harbour that it has breached its contract with Thousand Oaks.

27. For an award of damages for breach of contract to be proven at time of trial.

28. That judgment be entered against Defendant Mark Carboni, vicariously for Wood Harbour, for the full amount of Thousand Oaks' damages arising from copyright infringement, trademark infringement, unfair competition, and misappropriation.

29. That Defendant Mark Carboni be ordered to account for and disgorge to Thousand Oaks all profits they and their company have derived from his and his company's copyright infringement, trademark infringement, unfair competition, and misappropriation, and that judgment be entered in Thousand Oaks' favor against them, jointly and severally, in that amount.

30. That judgment be entered in favor of Thousand Oaks and against Defendant Mark Carboni for the full amount of Thousand Oaks' damages and Defendant Mark Carboni's profits arising from his direct and contributory copyright infringements of the Thousand Oaks Copyright Works.

31.     That judgment be entered in favor of Thousand Oaks and against Defendant Mark Carboni for the full amount of Thousand Oaks' damages and Defendant Mark Carboni's profits arising from his direct and contributory trademark infringements of the Thousand Oaks Trademarks.

32.     That such damages as Thousand Oaks is entitled to based on Defendant Mark Carboni's willful acts of copyright infringement, trademark infringement, false designation of origin, unfair competition, and passing off be trebled, or in the alternative, Thousand Oaks have an recover enhanced damages.

33.     That the costs of this action, including Thousand Oaks' reasonable attorneys' fees, be taxed against Defendant Mark Carboni vicariously for Wood Harbour.

34.     Awarding Thousand Oaks pre-judgment and post-judgment interest against Wood Harbour and Mark Carboni.

35.     Awarding Thousand Oaks such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted,
SHEETS LAW OFFICE
by Counsel

By: Kendal M. Sheets
Virginia bar number 44537
Attorney for Thousand Oaks Barrel Co., LLC
Sheets Law Office
15135 Peach Tree Lane
King George, VA  22485
P.O. Box 71
McLean, VA 22101
Phone: 703-489-8937
Fax: 571-526-5911
ksheets@sheetspatent.com